THE CATHOLIC BISHOP OF CHICAGO

*v.*

CHARLES CHINIQUY *et al.*

1. CHANCERY JURISDICTION — *enjoining ejectment suit.* A court of equity has no jurisdiction to enjoin the prosecution of an action of ejectment on the ground that the conveyance relied on by the plaintiff is absolutely void for want of delivery and acceptance, or if delivered, it was procured through threats and duress, the defense being complete at law.

2. SAME — *grounds for enjoining suit at law.* The indispensable basis upon which a defendant to an action at law may resort to a court of equity to restrain the prosecution of such action is, that he has some equitable defense, of which a court of law cannot take cognizance, either by reason of want of jurisdiction, or from the infirmity of legal process.

3. INJUNCTION — *of action at law.* An application to enjoin a suit at law concedes the plaintiff's strict legal right to recover, but is based upon the fact that the defendant has equities calling for the interference of the court, as clear as the legal right it seeks to control.

4. Where an action of ejectment is sought to be enjoined on the ground that the plaintiff's deed was never delivered and accepted so as to pass the legal title, a court of equity cannot be invested with jurisdiction to so declare by an allegation that the deed was subject to a trust which the plaintiff is attempting to pervert.

APPEAL from the Circuit Court of Kankakee county; the Hon. CHARLES H. WOOD, Judge, presiding.

Messrs. MOORE & CAULFIELD, for the appellant.

Mr. MELVILLE W. FULLER, for the appellees.

Mr. JUSTICE MCALLISTER delivered the opinion of the Court:

This is an appeal from the decree of the circuit court of Kankakee county, perpetually enjoining an action of ejectment pending in that court, which had been brought by appellant, as a corporation sole, having the legal title, against appellees, the defendants therein, to recover the land described in appellees' bill of complaint herein.

The bill, so far as we can discover through its abounding redundancies, really and substantially goes upon the ground that appellant had no legal title to the premises, that the conveyance relied upon by the latter was absolutely void, and the court has so found by the decree appealed from.

We might properly rest the case upon the sole ground of want of jurisdiction in equity. If the conveyance was absolutely void, as the court has found, for want of delivery and acceptance of the deed, to the Bishop of Chicago, through which deed the latter claimed title, that would have constituted a complete legal defense to appellant's action of ejectment. The indispensable basis upon which a defendant to an action at law may resort to a court of equity to restrain the prosecution of such action, is, that he has some equitable defense which a court of law cannot take cognizance of, either by reason of want of jurisdiction, or from the infirmity of legal process. The application to equity necessarily concedes the legal right, and it is upon the ground that such legal right which is sought to be enforced by the action at law is subservient to an equitable claim, which the defendant at law cannot set up there, that the court takes jurisdiction. Because it would be against conscience and good faith that the plaintiff at law should use the advantage of which he is thus possessed at law, when the legal right he is seeking to enforce is subservient to equities which the defendant at law is powerless to assert there. It is not upon the ground of want of legal right in the plaintiff at law, that equity interferes, but upon the principle of preventing a legal right from being enforced in an inequitable manner or for an inequitable purpose. Equities calling for its interference, as clear as the legal right which it seeks to control, must be shown before a court of chancery should interfere with an action at law. These principles are recognized by all the authorities. Kerr on Inj. pp. 13, 14, and cases in notes. They arise out of the very nature of the jurisdiction at law and in equity, and where properly applied harmonize the powers of equity, with the constitutional right a

party plaintiff has of having his case at law tried before a jury according to the course of the common law. Where the application is properly made, the defendant at law virtually says to the plaintiff : "I do not controvert your legal right, but I have a claim in respect of that right which in conscience and good faith ought to control you in the exercise of it ; and inasmuch as you have brought me into a forum where you can establish and enforce that right, while by the rules of that forum I am precluded from establishing my claim, I will therefore transfer the controversy to another forum, where, admitting your legal right, I shall seek, and be allowed, if I can, to establish my claim, and by doing so, control the exercise of your legal right." This is a very different position from that of such defendant saying : "I deny your legal right *in toto*, and inasmuch as I have no confidence in juries, will withdraw the controversy from a court of common law into a court of chancery, where the facts may be settled and the law applied by a single judge and without a jury." That position amounts to an arbitrary deprivation by a court of chancery of the right of a plaintiff at law to have his case tried according to the course of the common law, a right secured by constitutional guarantee. Now, in what respect does the position of appellees differ from that just supposed ? The appellant brought ejectment against them. They admit themselves in possession of the land in controversy, holding adversely to him. They admit the deed under which he claims is prior in time and was of record, but they say that deed was never delivered and accepted so as to become operative, or, if it were, it was obtained by threats and duress, and in either case it is absolutely void. Was not this a denial of his legal right, and were not these fit questions to be determined in a court of law ? Most clearly they were. If appellant had no title, for the reason that the deed relied on as vesting him with the legal title was absolutely void, that would seem to be conclusive of the whole case. That defense was clearly available at law, where plaintiff at law had a right to

have it tried.   The ground, the whole gist of the case made by the bill, was, that the conveyance under which appellant claimed was utterly void from the beginning.   That proposition, decided in appellees' favor, effectually cuts off all connec-. tion of appellant with the land in controversy.   The decree in this case does determine that proposition in their favor.   The court finds, as fact, that the deed referred to in the bill and made the subject of the controversy, was never delivered or accepted, and, as matter of law, that it is void.   This is far reaching enough, it would seem, to make a finality of the matter ; but the decree goes farther.   The deed was to the bishop of Chicago and his successors in office, " in trust for the use and benefit of the *Catholic population* of the *parish* of St. Anne, in the county of Iroquois."   The deed containing this trust is by the decree declared void, for want of delivery and acceptance, but it assumes to construe that trust, and declares the intention of the grantors to have been *for the use of the* whole population who had then settled at the *colony* of St. Anne ; and also finds that the Catholic bishop of Chicago has attempted to divert the property from the use of the whole population of St. Anne to the use of a small portion thereof. The counsel for appellees concede that the legal effect of the decree is only to determine that the Catholic bishop cannot assert legal title and the right of possession thereunder.   That is true, but because the only object of the bill was to determine the question of legal title, and the question upon which it was to be determined was cognizable by the court of law, in the action of ejectment, the court of chancery had no power or authority to deprive the plaintiff in ejectment of his constitutional right of a trial by jury, by the mere withdrawal of that question to itself by means of the preventive power of injunction against proceeding at law.   And we apprehend the other matters covered by the decree, which render it not only illogical but absurd, were prepared for the purpose of showing a color of jurisdiction.   If the deed purporting to convey subject to a trust never had any legal existence, what need could there

be of attempting to construe that trust, and then declaring that the bishop had been attempting to pervert it?

As before said, we might rest the decision of this case upon the want of jurisdiction in the court to withdraw from the court of law, the proper forum, the decision of the mere question as to appellant's legal title; but we go farther. The decision of the court below, that the deed in question was never delivered to or accepted by the grantee, is not only unsupported by the evidence, but directly against the testimony of the only witness upon the question. The deed bears date December 20, 1851. The grantors were Antoine Allain and wife. The grantee was the Right Rev. James Oliver Vandeveld, bishop of Chicago. The land covered by it was situate in the parish of St. Anne, which was a parish of the Catholic church, in the diocese of which the grantee was the bishop. Charles Chiniquy was a Catholic priest, and as such had been appointed to the charge of that parish by Bishop Vandeveld, under whose jurisdiction were both the priest and parish. Allain, the owner of the land, was a member of the Catholic church and of said parish. Chiniquy had contracted for the purchase of the land in question at the consideration of twenty-five dollars, for the purpose of putting upon it a building for the religious and secular purposes of the parish in his charge. There are some indications, from his testimony, that he even then had ideas of seceding from the Catholic church, as he a few years after openly did. At all events, he desired to get the title of this land into himself, for such uses for the parish as he chose to declare. According to the usages of the church, he was required to have it conveyed to the bishop of Chicago, for the use of the church. He resisted this requirement for some time, destroying deeds which the bishop had caused to be prepared for the purpose. Allain, on his part, had no other purpose in conveying the property than that it should go for the use of the congregation of the church of Rome at St. Anne. After the bishop had refused to accept a deed with the trust expressed, like that in

41—74TH ILL.

question, this deed was executed, placed upon record, and then taken by Chiniquy to the bishop, who at first, according to Chiniquy's testimony, declined to accept it, but, after an appeal made to him, which is described by the witness with much dramatic effect, Chiniquy says : "And he was startled by my prayers and tears, and he showed tears, then he shook hands and accepted it ; he told me it was received." The case, in this regard, rested wholly upon Chiniquy's testimony. The bishop was dead. But the evidence is abundantly sufficient to show both delivery and acceptance.

We are of opinion, also, that the decree is erroneous in respect to the construction of the language creating the trust. When the words are considered in the light of surrounding circumstances, there is no doubt as to the purpose of the conveyance. It was for the use of the Catholic population of the parish of St. Anne. When we consider that there was a Roman Catholic society there, over which Chiniquy was priest, Allain a member, and the grantee, bishop over all, who can doubt that the conveyance was intended for the use of that society ? The decree of the circuit court must be reversed, and the bill dismissed.

*Decree reversed.*