THE CONSOLIDATED COAL COMPANY OF ST LOUIS

*v.*

DANIEL SCHAEFER.

*Filed at Mt. Vernon November 5, 1890.*

1. LANDLORD AND TENANT—*notice to terminate tenancy—how given—and of the requisites of the notice—use of the word "occupied."* A notice by a landlord to terminate the tenancy for the breach of certain conditions of the lease under which the premises are held, may be served by posting a copy thereof upon the door of a building on the demised premises, when the tenant has abandoned the actual possession; and the fact that the notice may speak of the premises as "the premises now occupied by you," will not render such service improper, or show that the tenant is in the actual occupancy. The word "occupied" will be taken, under such circumstances, as used to indicate a constructive possession, only.

2. SAME—*declaring a forfeiture—effect of decree limiting the right.* Where a tenant's interest in a lease of coal lands, etc., is ordered to be sold by a court of equity, subject to all the rights of the lessor, who is

made a party, except that he shall not have the right to enforce a forfeiture of the leasehold on any grounds which had up to that time occurred, this will not prevent him from declaring a forfeiture for a subsequent breach of the covenants of the lease.

3. SAME—*lease of coal lands—covenants by the lessee construed—and what considered a breach.* A lease of land for mining coal contained a covenant that the lessees should "work the mine in a sound, safe and workmanlike manner, so as not to ruin the works," etc.: *Held,* that the word "ruin," as used in the covenant, was not confined in its meaning to the utter destruction of the works, but must be presumed to have been intended to include any serious impairment of the works, and anything which would essentially promote their injury, decay or destruction.

4. The lessee's interest under the lease mentioned, was, on a bill in equity, ordered to be sold for the benefit of creditors, and the lessor was prohibited by the decree from enforcing any right of forfeiture that had accrued up to that time. At the time of the entry of the decree there was some water in the mine, which had been allowed to accumulate there by neglect of the lessee. Afterwards, and after the sale under the decree, the water was permitted to still further accumulate, and fill the mine, to its serious injury: *Held,* that allowing the water to accumulate after the decree, and remain in the mine, was such a breach of the covenant to work the mine in a sound and safe manner, accruing after the decree, as justified a declaration of forfeiture of the lease.

5. EVIDENCE—*court record—when to be written up.* The record of proceedings in a court of record, showing the dismissal of a former suit between the same parties, is admissible in evidence, even though written up after the impaneling of the jury in the latter case. Such record, made up from the judge's minutes, imports verity.

6. PRACTICE—*specific objection — on motion for new trial.* A party can not be permitted to assign for error the modification of one of his instructions, when he fails to specify this as one of his grounds for a new trial.

7. INSTRUCTION—*submitting questions of law to the jury.* A judgment will not be reversed merely because the court may submit a question of law to the jury in an instruction, where the jury gives a correct answer and renders a just and proper verdict.

APPEAL from the Appellate Court for the Fourth District;— heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. Charles W. Thomas, for the appellant:

The particular three acres described in the complaint is also described in the notice to quit, and is there said to be occupied by the defendant. The words "actual possession," used in section 10, chapter 80, of the Revised Statutes, are equivalent to "occupancy." Actual possession is evidenced by occupation. *Coryell* v. *Cain*, 16 Cal. 567; *Churchill* v. *Ondendonk*, 59 N. Y. 134.

When the tenant occupies, a notice to quit must be personally served.

The affidavit that there "was then and there no one in actual possession of the premises described in the notice," is subject to two objections. There being no evidence that the three acres described in the notice are the same three acres described in the lease, it does not even *prima facie* appear that the tenant was not in actual possession of the three acres described in the lease; and secondly, as the affidavit is only *prima facie* evidence of the facts therein stated, it can not overcome the admission of the landlord himself, on the face of the notice, that the land therein described is occupied by the tenant. The circuit court should therefore have refused to permit the notice to be read in evidence.

The parties themselves, in the lease, where they provide, as a part of the clause against running the mine, that the lessee shall leave necessary pillars and prop up the works securely, define what they mean by "working the mine in a workmanlike manner." Courts will not allow forfeitures to take place where the construction of the instrument is doubtful. There must be a clearly defined duty, and a substantial breach of it, before an estate can be so divested. Here was a solemn waiver by the appellee of all causes of forfeiture in existence at the time of the sale, and the cause relied upon here existed.

The court should construe written contracts, and not leave this to a jury. *Lintner* v. *Millikin*, 47 Ill. 148; *Enistman* v. *Black*, 14 Bradw. 381.

The defendant proved on the trial another action pending in another court, for the same cause of action sued on in this, and the circuit court suspended the trial and allowed plaintiff to go and procure the entry of an order showing a non-suit in the other case. The order was not entered until this trial was nearly over, and had no relation back to the time of bringing this suit. It rested merely in the recollection of the officers.

A judgment is of no force or effect until it is actually entered of record. This doctrine was announced and acted upon by this court in *McLain* v. *Van Winkle,* 46 Ill. 406.

Mr. W. C. KUEFFNER, for the appellee.

Mr. JUSTICE BAKER delivered the opinion of the Court:

This was forcible detainer, brought September 4, 1888, by Daniel Schaefer, appellee, against the appellant company, and wherein he recovered a judgment in the circuit court, which was afterwards affirmed in the Appellate Court.

Appellee, on April 2, 1885, made a coal lease to Newberry & Hammett, by which he demised to them all the coal under several tracts of land, and also three acres of surface for a coal shaft and necessary buildings. There was no description of the three acres, other than that they were on the north side of the Ohio and Mississippi railroad. It seems, however, that the location of the three acres was afterwards fixed by the lessees subsequently taking possession of three acres and sinking the shaft and erecting buildings. The lease was to run for twenty-five years, on condition that the lessees should begin to sink a coal shaft within three months from its date, and continue the work. The lessees covenanted to pay every month one-eighth of a cent a bushel for all coal taken out during the preceding month, and also covenanted that they would "work the mine in a sound, safe and workmanlike manner, so as not to ruin the works, and leave necessary pillars, and prop up works securely." The lease provided for a forfeiture if any of the

covenants therein were not complied with. The appellees sunk the shaft and did some work in the mine, but became insolvent, and quit work in March, 1886. At the May term, 1886, of the St. Clair circuit court, in a suit brought to settle the affairs of Newberry & Hammett, and to which Schaefer, the appellee, and numerous creditors, were parties, a sale of the leasehold interest was decreed, and it was further decreed "that the rights of said Schaefer remain as if this order had not been made, except that said Schaefer shall not have the right to enforce a forfeiture of the leasehold on account of any grounds therefor which may have heretofore accrued." On June 22, 1886, the leasehold was sold by the master in chancery, under the decree entered in said cause, to one Taylor, for $3385, and appellees claim under said Taylor, by virtue of a conveyance made July 6, 1886. Newberry & Hammett had stopped work at the mine about the 26th day of March, 1886, and one John Howsam then ran the engine and kept the water out of the mine until some time in April, following, when the mine was abandoned. The mine then gradually filled with water, it requiring three months or more to fill it. Since then the mine has been idle, and the smoke stack and part of the engine have been removed. On April 30, 1888, a written notice to quit and deliver up possession within ten days was served on appellant, by posting the same on the outside wall of the engine house standing on the premises, "there being no one in the actual possession of said premises." The grounds upon which it was stated in said notice that appellee had elected to determine the lease, were, default in continuing the work of sinking the shaft for mining coal, default in working the mine in a sound, safe and workmanlike manner, and default in paying royalty.

The complaint herein was filed September 4, 1888, and is for the recovery of the possession of the three acres of surface, and it describes the premises unlawfully withheld, by metes and bounds. The notice to quit, above mentioned, contained

the same description of the three acres of surface, and also described all the lands mentioned in the lease.

It is claimed it was error to permit the notice of April 30, 1888, to be read in evidence. One ground for such claim is, that there being no evidence that the three acres described in the notice are the same three acres described in the lease, it does not even *prima facie* appear that the tenant was not in actual possession of the three acres described in the lease, and therefore it was incompetent to show notice by posting. Appellant evidently loses sight of the fact, that it appears, from the record, that the three acres described in the notice are the same three acres described in the complaint, and that it further appears therefrom that at the trial appellant admitted, in open court, that the premises sued for in the complaint are part of the premises embraced in the lease. Appellant must be held bound by this admission. The other ground for such claim is, that the affidavit showing that there was no one in the actual possession of the premises described in the notice is but *prima facie* evidence of that fact, and that the *prima facie* case is overcome by the fact that the landlord, in the notice, speaks of "the premises now occupied by you." This is sticking in the bark. The landlord merely used the words given in the statutory form for such notice. They were not words of his own selection, and even if they had been, it would have been manifest from the surrounding circumstances that the word "occupied" was used in the sense of held in possession, and as indicating a constructive possession, only.

The lease contained this covenant: "It is further covenanted and agreed by the said parties of the second part, that they shall work the mine in a sound, safe and workmanlike manner, so as not to ruin the works, and leave necessary pillars, and prop up works securely." Since appellee was a party to the decree entered at the May term, 1886, and on the 9th day of June, 1886, in the chancery suit, and it was decreed therein he should not have the right to enforce a forfeiture on

account of any grounds therefor which had theretofore accrued, it must be admitted he is precluded from now asserting a for-. feiture for injury done to the mine before that date. We may even assume, for the purposes of the case, that he can not equitably insist, as against appellant, who claims from the purchaser under the decree, upon any cause of forfeiture that. accrued prior to the sale of June 22, 1886. But the case is,. that at the latter date the mine was only partially filled with water, and that it continued to fill up for probably a month thereafter, or even longer; and no reason is perceived why it was not the duty of appellant and its grantor to forthwith pump out the water that at the date of the sale had already accumulated in the mine. The evidence is, that the filling of the mine with water, and, more particularly, permitting it to remain therein for so long a period, is injurious thereto,—that it will damage both the bottom and the roof of the mine, and that when the water is now removed the roof will fall in.

The court instructed the jury, that, under the lease, it was the duty of the lessees and those claiming under them to work the mine sunk on the premises, in a sound, safe and workmanlike manner, so as not to ruin the works, and that if they found, from the evidence, that since the sale under the decree this duty imposed by the lease had been violated, then the plaintiff had the right to terminate the lease and the tenancy. There was ample testimony upon which to predicate this instruction. To permit the mine to keep on filling up with water, and to permit the mine to remain full of water for a long period of time, thereby causing detriment to the mine, and even danger to its continued existence, was surely a breach of the covenant to work the mine in a sound, safe and workmanlike manner. It is claimed that the covenant is qualified by the clause, "so as not to ruin the works," and that the evidence did not tend to prove that the works would be entirely ruined, but merely that they would be somewhat injured. But the instruction contained the qualifying clause, "so as not .

to ruin the works;" and besides this, the word "ruin," as used in the contract, is not confined in its meaning to an utter destruction of the works, but must be presumed to have been intended to include a serious impairment of the works, and anything which would essentially promote their injury, decay or destruction.

It is assigned as error that the court improperly modified the fourth instruction asked by appellant. This assignment of error can not be regarded. Appellant filed, in the trial court, its points in writing, specifying the grounds of its motion for a new trial, and it was not specified therein that the court improperly modified instructions asked by it. This was a waiver of all claim that the modification made by the court was erroneous. *Ottawa, Oswego and Fox River Valley Railroad Co.* v. *McMath,* 91 Ill. 104.

It is claimed that the third instruction for appellee improperly submitted a question of law for the decision of the jury. The instruction is very clearly open to the criticism thus made upon it, but as the jury gave a correct answer to the question of law propounded to them, and rendered a verdict which was just and right under the law and the evidence, it is not perceived that the action of the court in this regard affords good ground for reversing the judgment.

It seems there was a prior suit in the county court commenced June 28, 1888, for the same cause of action sued on in this, and that said suit was dismissed and finally disposed of in that court on August 21, 1888, and before the institution of this suit, but that the clerk of that court had been dilatory in writing up the record of the order made in that court showing a non-suit. After the order had been entered of record it was offered in evidence, in rebuttal, by appellee. It was objected to the order, that the record thereof was made up after the jury in this case was impaneled. It appeared from the testimony of the clerk that the order was written up from the minutes made by the judge of that court at the time of the

proceedings. The record, when offered, imported a verity. *MacLain* v. *Van Winkle*, 46 Ill. 407, has no application to the case.

We find no manifest error herein, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*