## I. N. Brown et al., Appellees, v. E. A. Burke et al., Appellants.

1. ESTOPPEL—*application of doctrine in pais.* Estoppels *in pais* are as effective in courts of law as in courts of equity. A party who induced another to act upon his statements or representations will be estopped from denying the truth of such statements where they have led the other party into a line of conduct which would be prejudicial to his interests if the party who made the statements were permitted to deny they were true.

2. NEW TRIALS—*effect of written motion.* Points not assigned in a written motion for new trial are deemed waived.

Trover. Appeal from the Circuit Court of Madison county; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the February term, 1909. Affirmed. Opinion filed November 13, 1909. Rehearing denied March 23, 1910.

JAMES E. DUNNEGAN and E. BREESE GLASS, for appellants.

WARNOCK, WILLIAMSON & BURROUGHS, for appellees.

MR. JUSTICE SHIRLEY delivered the opinion of the court.

Appellees charge appellants in an action of trover with the wrongful conversion of one steam engine, boiler and other machinery connected therewith, the property of appellees, of the value of $750. Upon an issue made by a plea of not guilty, the cause was submitted to a jury and resulted in a verdict in favor of the appellees for the amount claimed.

A motion for a new trial being overruled, there was judgment on the verdict from which appellants prosecute this appeal.

On June 14, 1907, appellants residing at Alton and being the owners of the property described, had it located in a building in that city. Sometime prior to this, one Tarwater, a negro, with a view to purchasing, had been shown the machinery by appellant Burke.

After it had been shown to him, Tarwater went to appellee I. N. Brown at the place of business of appellees in St. Louis, representing himself the owner of the machinery, and desired to sell it. Appellee Brown went to Alton with Tarwater to examine the machinery and upon arrival Tarwater went alone to appellant Stiritz, procured the key to the building where the machinery was, and taking Brown into the building, showed him the machinery. While thus engaged, appellant Burke came into the building but had no conversation with Brown. Brown did not at this time agree to buy the machinery. After Tarwater and Brown had been at Alton and examined the machinery, Tarwater on the 14th of June returned to Alton and appellants executed and delivered to him a bill of sale for the machinery. The bill of sale states that Burke and Stiritz bargained and conveyed the machinery to Tarwater and acknowledges the receipt of a consideration therefor and is signed by appellants. The agreed price to be paid appellants by Tarwater was $1,000 and for this sum he made a draft drawn by himself on the Bank of Wakenda, Missouri, and payable to the Alton Savings Bank. The draft was taken by the latter bank for collection to be credited when collected to appellants. Tarwater had no funds in the Wakenda Bank. The draft was never paid and his scheme to get appellants' machinery was fraudulent and as between himself and appellants no title to the property passed. The bill of sale when given Tarwater by appellants, stated the consideration for the sale to be $1,000

Next day, June 15, 1907, Tarwater appeared at the office of appellees with the bill of sale in which the amount of the consideration had been altered to read $600. The alteration was written in ink of a different color from the body of the bill of sale and it was to be seen there had been an erasure of the amount of the consideration and that $600 had been inserted.

Tarwater desired to make a sale of the machinery to the appellees and agreed with Brown on a price of

$500, $300 cash, balance in ten days. Brown asked him for some evidence of ownership and Tarwater showed the bill of sale. Before making an agreement to purchase from Tarwater, Brown called appellant Stiritz by telephone and testifies that he told him he was Brown of The Brown Machinery Company of St. Louis; that there was a man in the office of the name of Tarwater who wanted to sell him the machinery in the Alton Roller Mill Building and asked if Tarwater was the owner of the machinery; also if the machinery was paid for and that if he (Brown) bought it, could he get a good title to it from the owner; to all of which inquiries Brown testifies Stiritz answered yes. And Brown further testifies that he told Stiritz there was nothing in the bill of sale as to the length of time given to get the machinery out of the building and he would like to know that, and Stiritz said he would give a reasonable time, a week or ten days. After some further conversation about how the machinery could be gotten out of the building, Brown testifies he bought the machinery on the terms above stated, giving Tarwater a check for $300 which he cashed, and took an assignment of the bill of sale; also a written order from Tarwater to appellants to deliver the machinery to appellees.

When Tarwater's draft to appellants was returned unpaid, appellants refused to deliver the machinery to appellees.

We have carefully considered the testimony relating to the telephone conversation above referred to as occurring between Brown and Stiritz and are of the opinion it establishes the truth of Brown's statements as to what was said and also that Stiritz was the person with whom he talked. The testimony shows that Brown took the precaution before purchasing, of calling Stiritz who assured him that Tarwater had bought and paid for the machinery and that it would be safe for Brown to buy it and acting upon such statement, Brown purchased. The fact that it was apparent the consideration in the bill of sale had been changed, is of

no importance in view of the assurance given by Stiritz that Tarwater had the right to sell the machinery and give a good title. Such change at best would only be a circumstance tending to put a purchaser upon inquiry and such inquiry having been made, the circumstance is immaterial.

Nor is there any sufficient evidence of a conspiracy between appellees and Tarwater to defraud appellants.

The theory of the trial court was that this conversation over the telephone operated as an estoppel *in pais,* and on behalf of appellees by the second and third instructions, instructed the jury in substance that if appellees were about to purchase the machinery of Tarwater and upon inquiry of appellant Stiritz, were informed that appellants had sold it to Tarwater and that Tarwater had a right to sell it, that then appellees had the right to purchase it from Tarwater and if they did so they became fully invested with the title and the right to possession. These instructions were based on the evidence introduced by appellees of the conversation with Stiritz over the telephone and it is assigned for error that such conversations were not admissible and that the instructions do not state a correct rule of law.

Estoppels *in pais* or equitable estoppels are as effective in courts of law as in equity. They are resorted to as a measure to prevent injustice. A party who induces another to act upon his statements or representations will be estopped from denying the truth of such statements, where they have led the other party into a line of conduct which would be prejudicial to his interests if the party who made the statements were permitted to deny they were true. Herman's Law of Estoppel, 340-341.

It may be conceded that Tarwater as between himself and appellants, did not acquire title to the property from appellants, and they were as against Tarwater the real owners, but the rule is that when the true owner allows another to appear as the owner of

the property or as having full power of disposition over it, and innocent third persons are thus led to purchase from such apparent owners, they will be protected.

"The rights of innocent third persons in such cases do not depend upon the actual title or authority of the persons with whom they deal but are derived from the act of a real owner which precludes him from disputing as against them the existence of a title or power which through negligence or mistaken confidence he caused or allowed to appear to be vested in the party making the conveyance." Williams v. Fletcher, 129 Ill. 356; Kinnear v. Mackey, 85 id. 96; Anderson v. Armstead, 69 id. 452.

We think the conversation with Stiritz was competent and there was no error in giving the second and third instructions for appellees. It is urged the first instruction given on behalf of the appellees was erroneous. It tells the jury that if they believe from the evidence that appellees were the owners of and entitled to the possession of the goods described in the declaration, and that appellants converted them and refused to deliver them after demand made, then appellees were entitled to recover their fair cash market value. This instruction as a part of the series and read in connection with instructions two and three given for appellees, was not erroneous. Appellants complain in this court of the modification of instructions one and two offered on behalf of appellants. Not having assigned this modification in their written motion for a new trial as reasons therefor, the alleged error is deemed to have been waived. Consolidated Coal Company v. Schaefer, 135 Ill. 210; Brewer & Hoffman Brewing Company v. Boddie, 162 id. 346; I. C. R. R. Co. v. Johnson, 191 id. 594; Yarber v. Chicago & Alton R. R. Co., 235 id. 589.

Error is assigned on the refusal of the court to give refused instructions numbered one to nine inclusive. We have examined all of them and find their refusal to

be in conformity with the legal principles applicable to the case expressed in this opinion, and it would be a mere repetition to consider the objections urged to each of them. There appearing no error in the rulings of the trial court in giving and refusing instructions or in the rulings upon the admissibility of evidence and the verdict being amply sustained by the evidence, the judgment will be affirmed.

*Affirmed.*