## CHARLESTON.

Wells Goodykoontz *et al. v.* White Star Mining Company

Submitted October 16, 1923. Decided October 30, 1923.

1. Equity—*Bill Enabling Court to Afford Some Relief Prayed for not Demurrable.*

   If equity has jurisdiction to grant any part of the relief prayed for, and sufficient matter appears on the face of the bill to authorize such relief, to that extent the bill should be regarded good on demurrer. (p. 657).

2. Mines and Minerals—*Threatened Waste of Inheritance by Lessee Under Coal and Coking Lease May be Enjoined.*

   Unless otherwise provided therein, there is an implied covenant in every lease of land for coal and coking purposes that the lessee will do nothing and leave nothing undone reasonably necessary to protect the inheritance against waste and destruction resulting from his operation on the land, and such threatened waste which may result from such negligence of the lessee may be enjoined. (p. 658).

3. Same—*Lessor of Coal and Coke Lease Held Entitled to Enjoin Removal of Pillars in Subjacent Strata.*

   Unless waived by the terms of the contract of lease, the lessor of land for coal and coking purposes has the right to subjacent support for all superincumbent strata of coal, and may enjoin removal by the lessee of the mine props or pillars in the subjacent strata until the mineable and merchantable coal in the upper seams has been mined out by the lessee, or by the lessor after the term of the lease has expired. (p. 660).

4. Same—*Lessee of Coal and Coke Lease Required to Account to Lessor for Damages to Inheritance.*

   If under such a lease the lessee has opened a mine in one or more of the mineable seams, and has, in violation of his duty, neglected to protect the inheritance, which has resulted in the destruction of any part of the coal unmined, equity will require him to account to the lessor for the damages so sustained by him to the inheritance. (p. 660).

Case Certified from the Circuit Court of Mingo County.

Action by Wells Goodykoontz and others against the White Star Mining Company. A demurrer to the bill was overruled, and the question certified for review.

*Affirmed.*

*Goodykoontz, Scherr & Slaven,* and *Fitzpatrick, Brown & Davis,* for plaintiffs.

*Randolph Bias,* and *D. J. F. Strother,* for defendant.

MILLER, PRESIDENT:

The court below overruled defendant's demurrer to plaintiffs' bill, and upon the joint application of the parties certified to us the question of the sufficiency of the bill upon demurrer.

Plaintiffs are the lessors and defendant is owner by assignment or grant of the lease made by the lessors to Given W. Merrill and W. J. McClaren, dated April 15, 1901, for coal mining and coal coking purposes, of a tract of 621.69 acres more or less, in Mingo County, for the term of thirty (30) years from April 29, 1901, upon a rental or royalty basis of five (5) cents per gross ton for each and every ton of coal dug, mined or carried away from or used or sold on the demised premises.

Exhibiting and vouching the said lease in support thereof, the bill alleges that by one of the provisions thereof the lessees therein covenanted that they would work and move the coal underlying the said premises in the most efficient, workman-like and proper manner, according to the most approved and suitable methods of modern mining, and furthermore than they would not leave unmined any available coal; that the immediate grantees of said lessee, the Merkman Coal & Coke Company, undertook to assume and carry out the provisions of said lease to be kept and performed on the part of said lessees; that underlying said tract there are two seams of valuable and marketable coal, known locally as the Alma Seam and the Pond Creek Seam, the former being situated about one hundred and fifty feet above and the latter slightly below the water level; that some time after the Merkman company obtained said lease, it installed upon said tract a coal mining plant and proceeded to mine the said Alma Seam, projecting into it air courses and rooms for the mining thereof, and that up to the time of its assignment of said lease to the defendant, White Star Mining Company, it had confined its operations and development to the said Alma

Seam, and had continued its operations therein for a considerable period of time, but that on account of the low price of coal prevailing on the market and the inability of its stockholders to finance the business, said company had failed and was finally declared a bankrupt by the United States District Court; that in said bankruptcy proceedings one S. J. Patterson became the purchaser of said lease and leasehold property, who afterward, by deed of May 8, 1907, assigned and transferred the same to the defendant, White Star Mining Company, which thereby undertook and assumed to carry out and perform all the obligations of said deed of lease to be kept and performed on the part of the lessees therein. And it is further alleged that the White Star Mining Company then entered upon said premises and for several years likewise confined its operations to said Alma Seam, extending the entries, air courses and rooms throughout approximately the whole of said seam underlying said land; but that about 1912, said company began also to mine said Pond Creek Seam, and for some length of time thereafter carried on simultaneously the mining of coal from both seams, and that about the year 1917, said company, over the protest and objection of plaintiffs ceased to operate said Alma Seam, representing, however, that its operations in said seam would be speedily resumed; and the bill further alleges that said defendant has wrongfully and in disregard of the covenants in said lease, and of the rights of plaintiffs thereunder, abandoned the mining of said Alma Seam and has pulled up and has withdrawn its tracks therefrom, leaving in said seam at that time unmined approximately 2,000,000 tons of merchantable coal, the exact acreage and tonnage being to plaintiffs unknown, the reason for the abandonment of the Alma Seam being, as the bill alleges, that the Pond Creek Seam could be mined at a greater profit under the conditions then existing than the Alma Seam.

And as constituting breaches of the alleged covenants in said lease, and upon which plaintiffs predicate their grounds for the relief, the bill alleges: first, that by reason of the abandonment of said Alma mine and the inattention thereto by defendant, water has been allowed to accumulate therein, and what is known in mining as "squeezes" have developed

at different points therein, and the overhead slate has been allowed to fall, and that unless the work of mining said coal is resumed in said Alma Seam the water will continue to accumulate, the slate to fall, and the squeezes to continue therein until access thereto will be rendered impossible and the coal acreage in said mine will be wholly lost to plaintiffs; second, that in disregard of the modern and proper methods of mining, the defendant is pulling and removing the pillars in the Pond Creek mine, thereby depriving the Alma Seam of subjacent support, and if this practice is continued and the Pond Creek Seam mined, the coal in the Alma Seam will be finally deprived of support and the coal therein will be wholly lost to plaintiffs; that already and as a result of said improper method and manner of mining said coal a great portion of the coal in the Alma Seam, amounting to at least 1,000,000 tons thereof, has been wholly lost to plaintiffs and the mining thereof rendered wholly impossible, and for which defendant has been rendered liable to account to plaintiffs at the rate of royalty specified in said lease.

And finally, it is alleged that to comply with the covenants in said lease, defendant should, before continuing to mine the Pond Creek Seam, first mine and remove all the coal from said Alma Scam and should also refrain from pulling the pillars in the Pond Creek Seam, and leave the same to support the Alma Seam until all the merchantable coal is removed therefrom.

As analyzed and summarized by plaintiffs' counsel, the prayer of the bill is that defendant by injunction be required: (a) to mine the coal remaining in the Alma Seam; (b) to cease the mining of coal in the Pond Creek Seam until the coal in the Alma Seam has been removed; (c) to refrain from removing the pillars and supports in the Pond Creek Seam until the coal in the Alma Scam has been removed.

Or, in the alternative, if for any reason the court should be of opinion that plaintiffs are not entitled to such injunctive relief, then that, (d) the defendant be compelled to account for the coal remaining in the Alma Seam and to pay complainants the royalty due them, and (e) for general relief.

The demurred, though general in form, specifically challenges jurisdiction in equity to grant any of the several

prayers for relief. It is fundamental, that if equity has jurisdiction to grant any part of the relief prayed for, and sufficient matter appears on the face of the bill to authorize such relief, the bill is good to that extent and should not be dismissed. *Eakin* v. *Hawkins,* 48 W. Va. 364; *Lockhart* v. *Hoke,* 85 W. Va. 382, 385.

The controlling question presented, then, is does the bill now before us present any fact or facts upon which the relief prayed for or any part thereof may be justified? Examining these in the order named, (a) is anything alleged or shown on the face of the deed of lease justifying a court of equity in commanding the defendant company to mine the coal remaining in the Alma Seam? We find nothing. The lease, which in general is the measure of the rights and liabilities of the parties and their privies in estate, is a grant to the lessees of the right for a period of thirty years, with the privilege of an additional thirty years upon the same terms, to mine the coal under the tract of 621.59 acres. The only consideration therefor is the covenant on the part of the lessees to pay the lessors five cents per ton for each and every ton of 2240 pounds of coal dug and mined, with a minimum royalty of not less than $1,500.00 per year for each and every year the lease shall continue. The lease contains no other limitation or restriction except the specific covenant already recited, and those necessarily implied from the nature of the instrument and the objects and purposes thereof thereby disclosed. Under the lease the lessee is privileged to mine any and all seams of coal found on the land, and there is nothing alleged or appearing in the lease specifically limiting it in its rights therein. There is nothing in the lease which requires the lessee to first exhaust the Alma Seams. Indeed, no seams are specifically mentioned therein. And for all that appears there may be three or more mineable seams of coal in the land; and for anything that appears in the instruments, they might all be worked simultaneously, or separately, at intervals, without breach of any covenant, express or implied, but by such method, of course, as not to do injury to the reversion or the rights of the lessors.

What we have said with respect to the first proposition is equally applicable to the proposition ''b'', that the defend-

ants be enjoined from mining coal in the Pond Creek Seam until the coal in the Alma Seam has been removed. Nothing is alleged or appears in the lease to demand it, unless what is applicable to both propositions, the covenant in the lease to work and mine the coal in the most effectual, workman-like and proper manner and according to the most approved and suitable methods of modern mining, so requires. We think we may lay it down as a correct principle that if a lessee under such a lease opens and undertakes to work one of two or more seams of coal, there is an implied contract that he will do nothing nor leave undone anything reasonable necessary to protect the inheritance against waste and destruction, and while in this case the lessee may not be compellable to first exhaust the upper seam of coal, if it elects not to do so, it must protect the mine from destruction from water or falling slate which would result in the utter destruction of the mine and render the coal therein unmineable. This proposition seems founded upon principles of sound reason and exact justice. The neglect of the lessee to protect the reversion in some way would amount to waste pure and simple, against which a court of equity will not shut its doors. In *Consolidated Coal Co.* v. *Schaeffer* (Ill.), 25 N. E. 788, the lease required the lessee to "work the mine in a sound, safe and workmanlike manner," very like the covenant in the lease in this case, and it was decided that the covenant was broken by the lessee by allowing the mine to fill with water and remain in that condition for a month. In *Lord's Ex'ors.* v. *Carbon Iron Mfg. Co.,* 38 N. J. Eq. 452, it was decided that an injunction should issue to prevent one of two adjacent mine owners from removing the supports which prevent the surface of his mine from caving in, where it appears that such removal would result in the destruction of his neighbor's mine. When a lessee enters into possession of the leased premises, generally he has the right to exclusive possession thereof, but he will not be permitted, without his rights are so extended by the lease, to do any act which will result in the injury or destruction of the reversionary interest of the lessor, and in the case of a coal lease the lessee should not exercise his right to mine and dig for coal without first

considering the probable effect of his operation upon the reversionary interest of the lessor, and if he conducts his mining operations in a manner calculated to cause permanent injury to the inheritance, the lessor may maintain an action to protect his inheritance. White on Mines and Mining Remedies, §138, p. 187; 2 Snyder on Mines, §1628, p. 1183. That equity has jurisdiction to prevent waste as between landlord and tenant, is well settled by the authorities. 2 Taylor on Landlord and Tenant, §690, pp. 301-302; 4 Pom. Eq. Jur. (4th ed.) §1348.

Nothing is alleged or shown by the pleadings to justify the conclusion that it is necessary for the defendant to cease mining the Pond Creek Seam until the Alma Seam is exhausted, if sufficient pillars be left in the lower seam to give the proper subjacent support to the upper.

Thus we are brought to a consideration of proposition (c), relating to the removal of the pillars in the Pond Creek Seam, until the coal in the Alma has been removed. This involves the principal question presented, the alleged right of plaintiffs to subjacent support for the upper seam. The bill does not allege that plaintiffs are the owners of the surface of the land, nor indeed that they are the owners of the coal leased, except what is implied from the lease. The lessee has not, and perhaps could not, question the title of his landlord. We may assume, therefore, that plaintiffs are the owners of the coal in the tract, and if so, that they are entitled to all the rights of the owner or other superincumbent interest in the land. It is well settled in this state, as elsewhere, that the owner of the surface, unless by contract he has waived it, has the right of subjacent support, and that such waiver must be in specific terms, or terms necessarily implying such waiver. *Griffin* v. *Fairmont Coal Co.*, 59 W. Va. 480; *Hall* v. *Harvey Coal & Coke Co.*, 89 W. Va. 55, 59.

But will equity interfere by injunction to prevent the incurrence of damages to the reversion in a leasehold estate? Both cases cited, brought to vindicate the rights of surface owners, were actions at law for damages to the surface. The lease in this case has eight years to run before the expiration of the first term of thirty years, and it is contended that an action for damages will not accrue until the end of that period.

Several grounds or propositions of equitable cognizance are urged in support of the bill and present relief; first, voidance of a multiplicity of suits; second, the likelihood that at the end of the term of the lease plaintiffs will find themselves unable to gain access to the destroyed mine for the purpose of measurement and ascertaining their actual losses; and, third, that at the end of the term the landlords may find their tenant dead or bankrupt, with nothing left to answer a judgment for damages. Of course, if the action will not accrue until the end of the lease, the rule respecting a multiplicity of suits would not be controlling. Other grounds of equity would have to intervene to justify injunctive process. Loss of evidence and possibility of insolvency of the lessee, if properly pleaded, might furnish the requisite grounds for equitable relief. But need we deal with these principles of equitable rights and practices. Respecting the Alma mine the bill alleges, not that all the coal in that seam has been lost by the alleged failure of defendant to operate it properly and to keep it free of water, but only that about one million of the two million tons remaining has been wholly lost to plaintiff. For this loss, of course, an action at law would lie for the damages sustained. As to the waste of the remaining coal not so affected, but which the bill alleged will occur if the defendant is not commanded to mine the coal or protect it from flooding and other destruction by undermining the subjacent support, some relief other than the inadequate remedy at law ought to obtain. Defendant may not be required by the terms of its lease to mine out the coal, for it is not so denominated in the lease; but while it retains exclusive possession, as is its right, it must not by positive act or by omission to act do anything destructive of the inheritance. If, as the bill alleges, defendant has abandoned the Alma Seam, pulled up its tracks and refused to go on with the mining of that seam, and as alleged, is causing further waste by pulling the pillars in the Pond Creek Seam, there ought to be some remedy to save the inheritance from such destruction. Of course, the lease gives the lessee the right to take all the coal save sufficient to support the surface, but if it can not, or does not intend, to do so within the life of the lease, coal will remain in the land for which the lessors will not be compen-

sated. It is the protection of these reversionary or contingent rights, if subsisting, that gives equity jurisdiction in the premises. We have already decided that plaintiffs are entitled to support of the Alma Seam, and that it would amount to waste on the part of the lessee, having operated and worked the Alma Seam, as alleged, to allow it to become filled with water, or to go so unprotected as to result in the loss of the unmined coal. And this, in our opinion, is the limit of plaintiff's rights with respect to the Alma Seam. Plaintiffs have no right to stay by injunction the hand of defendant in the mining of the Pond Creek Seam until all the coal in the Alma Seam is exhausted. But they have the right to restrain only those acts which are calculated to injure their reversionary interest. White on Mines and Mining Remedies, §495, p. 655; Id. §138, p. 187; 2 Snyder on Mines, §1628, p. 1183; 2 Taylor on Landlord and Tenant, §690, p. 301. This rule is especially applicable between landlord and tenant. The landlord may resort to this preventative remedy against his tenant, though the wrongful act complained of, if committed by a stranger, would not be so redressable in a court of equity. 16 R. C. L. 739, §232; 4 Pom. Eq. Jur. (4th ed.) §1348.

The remaining question presented is, is the bill good as one for an accounting? We think that if the facts are as alleged, they will entitle plaintiffs to an accounting for the waste already committed, if any. Whether there has been any such waste will, of course, depend on the facts developed on the hearing of the cause upon its merits. We are now disposing of the demurrer only. But in such an accounting the parties will be controlled and limited by the rules and principles enunciated in *Flavelle* v. *Coal & Coke Co.*, 82 W. Va., 295.

Our answer to the points submitted is that in the particulars pointed out in the opinion, the bill on demurrer is good.

                                                            *Affirmed.*