Howard L. Scott et al., Appellees, v. Ethelyn B. Hatch, Appellant.

Gen. No. 8,910.

in this court at the February term, 1935. Heard

Opinion filed May 17, 1935.

EDWARDS, BLOCK & BAIRSTOW, of Waukegan, for appellant; J. E. BAIRSTOW and SIDNEY H. BLOCK, of counsel.

R. W. CHURCHILL, of Grayslake, for appellees.

MR. JUSTICE DOVE delivered the opinion of the court.

On November 23, 1934, appellees, the plaintiffs below, filed their sworn complaint in the circuit court of Lake county, seeking the reformation of a contract theretofore entered into between plaintiffs and the defendant and her deceased husband, whereby the defendant and her husband agreed to sell and the plaintiffs agreed to buy certain real estate described in the complaint. The relief sought was also the release and cancellation of a certain judgment theretofore rendered against the plaintiffs, which judgment had, on motion of the plaintiffs, theretofore been opened up and leave granted the defendants therein to plead. The complaint also prayed for an order restraining the defendant from the prosecution of the suit at law which was then pending and undetermined. On November 26, 1934, the complaint having been amended, an order was entered directing that a preliminary injunction issue staying the further prosecution of said suit at law until the further order of the court. This

order was conditioned upon the plaintiff's filing a $1,000 bond, with surety to be approved by the clerk. Upon the same day the defendant entered her motion to vacate this order and to dissolve the preliminary injunction. Upon a hearing, this motion was denied and from that order this appeal has been prosecuted.

The complaint as amended alleges that on November 1, 1926, the following written contract was entered into by appellees and Fred L. Hatch and appellant Ethelyn B. Hatch, viz.:

"This agreement, made this first day of November, in the year nineteen hundred and twenty six, between Fred L. Hatch and Ethelyn B. Hatch, his wife, hereinafter called the sellers, and Arthur Gardiner, Howard L. Scott and Nicholas Robinson, Jr., as tenants in common, hereinafter called the purchasers: Witnesseth, that if the said purchasers shall first make the payments and perform the covenants hereinafter mentioned, on the part of the purchaser to be made and performed, the seller hereby covenants and agrees to convey or cause to be conveyed to the purchaser, in fee simple, as tenants in common, clear of all incumbrances whatever, except as herein noted, by a good and sufficient conveyance, the following described real estate in the County of McHenry and State of Illinois, known and described as: (describing forty acres of land).

"And the purchaser hereby covenants and agrees to pay the seller at the office of the Spring Grove State Bank, Spring Grove, Illinois, or at such other place as the seller shall in writing designate and appoint, the sum of Fourteen Thousand ($14,000.00) Dollars, in the manner following: Twenty five hundred ($2500.00) dollars upon signing of this contract. The balance of eleven thousand five hundred ($11,500.00) dollars to be paid on or before five years from the date hereof. The purchasers have the privilege of paying $500.00, or

any multiple thereof at any time. It is further agreed by the respective parties hereto, that when $5000.00 of the purchase price has been paid the said sellers shall then deliver a warranty deed to the purchasers and accept from them a trust deed mortgage for the sum of $9,000.00.

"Said trust deed notes bear interest at the rate of six per cent per annum, payable semi-annually. All payments shall bear interest at the rate of six per cent per annum payable semi-annually, on the whole sum remaining from time to time unpaid, and to pay all taxes thereof falling due after October 12th, 1926.

"And in case of the failure of the purchaser to make either of the payments, or any part thereof, or to perform any of the covenants on the part of the purchaser hereby made and entered into this contract shall, at the option of the seller, be forfeited and determined, and the purchaser shall forfeit all payments made on this contract, and such payments shall be retained by the seller in full satisfaction, and in liquidation of all damages sustained, and the seller shall have the right to re-enter and take possession of the premises aforesaid; or in case of failure of the purchaser to make either of the payments, or any part thereof as hereinabove agreed, and in case said default shall continue for the period of sixty days, then the subsequent payments shall be immediately due and payable at the option of the seller. (Then follows a warrant of attorney in the usual form, authorizing a confession of judgment.)

"Title to be shown by abstract of title, or merchantable copy or a guarantee policy or Torrens Certificate of title to date hereof. It is mutually agreed by and between the parties hereto that the time of payment shall be of the essence of this contract; and that the covenants, options, agreements and powers herein contained shall extend to, and be obligatory upon the

heirs, executors, administrators, devisees, successors and assigns of the respective parties. It is further agreed that the said second party shall take possession of the above described premises, on the day of execution of this contract, and that they shall not cut down any standing trees or timber during the period of this contract, without the written consent of the first party herein.

> "Nicholas Robinson, Jr. (SEAL)
> Arthur Gardiner (SEAL)
> Fred L. Hatch (SEAL)
> Ethelyn B. Hatch (SEAL)
> Howard L. Scott (SEAL)"

The complaint as amended then alleged that appellees were officers of Fox Lake Golf and Country Club, which maintained its club grounds across the street from the tract described in the foregoing contract, that Ethelyn B. Hatch and Fred L. Hatch knew the officers of the club personally and lived across the road from the club grounds, that the club desired to purchase the land described in the contract and appellees were appointed agents of the club to negotiate the transaction, that Ethelyn B. Hatch and Fred L. Hatch advised appellees that they would sell the tract described in the contract upon the terms therein stated and that appellees informed the owners that the club was willing to purchase upon those terms but was not able to make the initial payment of $2,500. The complaint as amended then recited:

"Whereupon it was agreed by and between the plaintiffs and the said Fred L. Hatch and said Ethelyn B. Hatch, his wife, she acting for herself and also as agent for the said Fred L. Hatch, that if the plaintiffs Howard L. Scott, Arthur Gardiner and Nicholas Robinson, Jr., would advance the said sum of $2500.00 so required for the closing of said transaction, and enter into contract with said Fred L. Hatch and Ethelyn

B. Hatch for the purchase of said land, for the price, and on terms as above set forth, that as and for security for the said sum of $2500.00 so advanced to said Club by the plaintiffs, they, the said Fred L. Hatch and Ethelyn B. Hatch would execute the said purchase contract in the name of the plaintiffs as purchasers, and would, on demand, whenever said Fox Lake Golf and Country Club should repay said sum of $2500.00 to the plaintiffs, cancel said contract with the plaintiffs and enter into a new contract of like terms, tenor and effect, but with full credit for such payment, with Fox Lake Golf and Country Club, and would then release the plaintiffs from all liability under such contract.''

The complaint as amended then alleges that acting upon such verbal agreement, appellees afterward executed the contract to purchase said real estate and paid the Hatches the sum of $2,500 as required in the contract; that on March 1, 1927, the club refunded to appellees the $2,500 so advanced by them and appellees thereupon assigned the contract of purchase to the club, which accepted the assignment, but the assignment was not consented to by the Hatches; that on March 27, 1927, appellees caused to be typed on the front of the copy of the contract so retained by them which had been assigned to the club a release of the obligation of appellees and presented the same to the Hatches and requested them ''to execute the consent to such assignment, and to execute the release of liability as so typed on the face of such contract, or a release of liability of the plaintiffs under such contract, or to execute to the Fox Lake Golf and Country Club a new contract of like tenor and effect, allowing credit for the payment so made, and to release the plaintiffs from liability under such original contract, all in manner as they, the said Fred L. Hatch and Ethelyn B. Hatch had agreed to do at the time of the execution of such contract, all as above set forth,'' that the Hatches refused this request but informed the appellees ver-

bally that they would release them from the obligation and look to the club for performance of the contract, that appellees have had nothing further to do with the contract as individuals and did not have any knowledge that the Hatches claimed that appellees were personally bound by the contract until December 12, 1931, when appellant advised them that she expected to procure judgment against them as provided in said contract.

The amended complaint then alleges that on December 14, 1931, appellant caused a judgment for $11,963.83 to be entered by confession against appellees, being the amount then due under the provisions of the contract, that after said judgment was entered, it was opened up and leave granted appellees to plead, that pleadings were filed and issues made up and the cause set for trial for November 26, 1934, that the defense of appellees in said action is that it was the understanding and agreement of all of the parties when the contract was executed that the appellees were acting not in their individual capacity but as agents for the Country Club, that it was the understanding and agreement of all of the parties, when the contract was executed, that appellees executed it in order to secure them for the initial payment of $2,500 so advanced by them for the use of the club in the purchase of said land, and that the Hatches agreed at the time of the execution of the contract that they would cancel the contract as to appellees whenever the club was prepared to assume such contract and reimburse appellees for such advancement; that said club did assume the obligations of such contract on March 1, 1927, and obligated itself to perform such contract according to its terms and that the Hatches verbally released appellees from all obligation under such contract and although they have been requested to perform such verbal agreements, they have refused so to do.

It is insisted by appellant that the written contract entered into on November 1, 1926, was absolute in its terms and that the rule obtaining both in law and in equity is that parol proof that such a contract is not absolute but conditional is not admissible, that the allegations of the amended complaint are obnoxious to the statute of frauds, that the allegations of the complaint as amended do not disclose that the remedy at law is inadequate, that the appellees are guilty of laches and that the order was erroneous in that it did not require appellees to furnish a proper bond inasmuch as the order did not specify any time within which the bond need be filed.

Counsel for appellees state that it is not contended that there was any mistake in the written contract or in any of its terms or provisions, but that the verbal representations of appellant made prior to the execution of the contract led appellees to act, that her subsequent verbal statements to appellees after the contract had been assigned to the club, to the effect that they were released from all liability thereunder and that she would look entirely to the club for the performance of the contract and her conduct in accepting performance from the club until it made default constitutes a course of conduct which in equity estops appellant from attempting to assert against appellees a breach of said contract, that the enforcement of the contract would result in such a serious fraud upon appellees that a court of equity will restrain appellant from prosecuting in a court of law an action to recover damages for the breach of the provisions of the original contract, that the doctrine of laches or the statute of frauds does not apply and that this is not a proceeding to enjoin the collection of a judgment and that the order granting the injunction was sufficient even though no time was specified in which the injunction bond was to be filed.

In *Lichtstern v. J. Rosenbaum Grain Co.*, 176 Ill. App. 250, it appeared that an order was entered granting the complainants a temporary injunction upon complainants filing a bond with surety to be approved by the clerk of the circuit court of Cook county, but did not fix the time in which it should be filed. The court in holding the order erroneous in this respect said that the order does not in terms enjoin or restrain the defendants from doing anything, nor does it in terms expressly require the complainant to file the specified bond, nor fix any time within which he may file it. It is therefore entirely optional with him when, if ever, the injunction shall issue. The record in the *Lichtstern* case did not show, nor does the record in the instant case show, that any injunction bond was ever filed nor any injunction actually issued, and what was said in the *Lichtstern* case is equally applicable to the instant case as by the terms of the order the court in effect delegated to appellees the power of deciding for themselves whether their need was urgent or otherwise, and placed in their hands the right to use or not to use in their discretion the "strong arm of the court." In our opinion the order of the court should have required the bond, upon the filing of which the issuance of the preliminary injunction was conditioned, to have been filed within a reasonable time, specifying the time.

The fraud which appellees insist warranted the chancellor in entering the order directing that a preliminary injunction issue is found in the allegations of the complaint, wherein it is averred that prior to the execution of the contract, appellant promised that if appellees would advance the initial payment to her, she would, on demand and upon the repayment to appellees of said amount by the club, cancel said contract with appellees, release them from all liability thereunder and enter into a new contract with the club,

together with the further allegations of her refusal thereafter to do as she agreed, although the club had repaid appellees the initial payment. These averments, insist appellees, when considered in connection with the further allegations that appellant verbally promised appellees that she would release appellees from their contract and look to the club for the performance thereof and that she did thereafter look to the club until the club defaulted and that she thereafter repudiated her promise and began the suit, to enjoin the prosecution of which the instant proceeding was instituted, constitutes such conduct as a court of equity will take cognizance of and hold that appellant is estopped from asserting against appellees a breach of the original contract.

In the early case of *Coffing v. Taylor,* 16 Ill. 457, it was said that to permit previous oral promises, statements or understandings of the parties to written agreements to be shown would destroy the distinction between verbal and written contracts. In *Murphy v. Schnell,* 248 Ill. 182, the court said: ''Evidence of prior or contemporaneous negotiations leading up to the consummation of a contract or of conversations or declarations at the time it was completed or afterwards, is always rejected.'' In *Sterling-Midland Coal Co. v. Great Lakes Coal & Coke Co.,* 334 Ill. 281, it is said: ''The rule is too well recognized to require citation of authorities that all preliminary negotiations, whether oral or written, are merged in the written contract.''

Counsel for appellees concede that in a court of law verbal agreements of the parties at the time of the execution of an instrument in writing, or subsequent thereto may not be received in defense of a suit brought thereon, but insist that in equity the rule is different and in support of this contention cite the cases of *Hunter v. Bilyeu,* 30 Ill. 228; *Dillard v. Jones,* 229 Ill.

119, and *Catholic Bishop of Chicago v. Chiniquy,* 74 Ill. 317. *Hunter v. Bilyeu, supra,* was a proceeding in equity to reform a contract for the sale of land by causing to be inserted therein certain tracts of land alleged to have been omitted therefrom through mistake. In its opinion the court stated that as a general proposition, the terms of a written agreement cannot be changed by parol; that where parties commit their contracts to writing, the writing forms the only evidence of its terms and all antecedent and contemporaneous verbal agreements are merged in the written contract. The opinion of the court further states that fraud, trusts, accident and mistake are subjects peculiarly proper for the jurisdiction of courts of equity and the jurisdiction of a court of chancery to correct mistakes is no less important to the due administration of justice and the safety of the citizen than the rule of the common law, that parol evidence cannot be received to add to, or vary a written contract, but if a court of equity did not have the power to correct mistakes in a written instrument, great injustice would be perpetrated with impunity and that a court of equity does not transcend its powers in declaring a contract to be as the parties have made it, even though in so doing an entirely new and different contract is made. The court then examined the evidence and held that the alleged mistake was not proven. *Dillard v. Jones, supra,* was a proceeding to quiet title and correct a mistake in describing a certain tract of land as the same appeared in all the files and decrees entered in a partition proceeding. In its opinion the court stated that the doctrine is elementary that parol evidence is not in general admissible between the parties to vary a written instrument. That it was equally well settled that mistake, fraud, surprise and accident furnish exceptions to this otherwise universal doctrine, and parol evidence in support of these exceptions has been ap-

plied many times in the correction of contracts where the mistake was one of fact, mutual and common to all the parties to the instrument and reversed the decree of the lower court and held that the master's deed in the partition proceedings should be corrected as prayed. *Catholic Bishop of Chicago v. Chiniquy, supra,* was a proceeding to enjoin an action of ejectment on the ground that the conveyance relied upon by the plaintiff in the ejectment suit was void. The trial court so held and granted a perpetual injunction restraining the prosecution of the ejectment proceeding. In reversing this decree and holding that equity was without jurisdiction, the court stated that the indispensable basis upon which a defendant to an action at law may resort to a court of equity to restrain the prosecution of such action, is, that he has some equitable defense which a court of law cannot take cognizance of either by reason of want of jurisdiction, or from the infirmity of legal process. The application to equity necessarily concedes the legal right, and it is upon the ground that such legal right which is sought to be enforced by the action at law is subservient to an equitable claim, which the defendant at law cannot set up there, that the court takes jurisdiction. It is not upon the ground of want of legal right in the plaintiff at law that equity interferes, but upon the principle of preventing a legal right from being enforced in an inequitable manner or for an inequitable purpose. Equities calling for its interference as clear as the legal right which it seeks to control, must be shown before a court of chancery should interfere with an action at law. The opinion then states that the deed under which appellant claims was of record, but appellees insist that it was never delivered or accepted so as to become operative, or if it were, it was obtained by threats and duress and in either case it is void. ''Was not this a denial of his legal right,'' inquires the court, ''and were not these fit questions to

be determined in a court of law? Most clearly they were. If appellant had not title, for the reason that the deed relied on as vesting him with legal title was absolutely void, that would seem to be conclusive of the whole case. That defense was clearly available at law where plaintiff at law had a right to have it tried.''

As stated in these cases, fraud, accident, and mistake are well known grounds for equitable intervention and for the reformation and cancellation of written instruments. The allegations of this complaint do not state that these oral promises of appellant were not unincorporated in the contract by mistake or that they were omitted through inadvertence, but the allegations are that the very contract the parties thereto intended to execute in every particular was executed. These verbal agreements set up a state of affairs entirely different from the plain words of the written instrument. Appellees so concede, but insist that when a person, by his words or conduct, voluntarily causes another to believe in the existence of a certain state of things, and induces him to act upon that belief, so as to change his previous position, he will be estopped to aver against the latter a different state of things. This is the doctrine of estoppel and the essential element is fraud. *People v. Brown,* 67 Ill. 435. This doctrine is invoked to prevent injustice or a fraudulent result. *Zurich General Accident & Liability Ins. Co. v. Industrial Commission,* 325 Ill. 452; *First Lutheran Church of Pontiac v. Rooks Creek Evangelical Lutheran Church,* 316 Ill. 196; *Sherer-Gillett Co. v. Long,* 318 Ill. 432; *Brown v. Burke,* 155 Ill. App. 249; *Commercial Union Assurance Co. v. Scammon,* 133 Ill. 627; *Milligan v. Miller,* 253 Ill. 511; *Siegel, Cooper & Co. v. Colby,* 176 Ill. 210; *Bondy v. Samuels,* 333 Ill. 535.

In *People v. Brown, supra,* the doctrine of estoppel by words or conduct is defined and the opinion then proceeds: ''Text writers denominate this estoppel by conduct, in order to which all of the following elements

must be present: 1. There must have been a representation concerning material facts. 2. The representation must have been made with knowledge of the facts. 3. The party to whom it was made must have been ignorant of the truth of the matter. 4. It must have been made with the intention it should be acted upon. 5. It must have been acted upon. In this connection, it is said, the representation here spoken of is one external to, and not necessarily implied in, the transaction itself, and fraud, or something tantamount thereto, is now the distinctive character of this kind of estoppel. Bigelow on Estoppel, introduction, p. 60.''

In the instant complaint it is not alleged that appellant made any misrepresentation of material facts with a purpose to deceive nor is there any allegation that appellees by anything that appellant said or did changed their position in reliance upon the representation or conduct of appellant. The complaint alleges that appellees bought this land in 1926 and the club started paying interest and taxes. In March, 1927, the contract was assigned by appellees to the club and the club continued to pay as it had done before the assignment. It was not until May 27, 1927, according to the allegations of the complaint, that appellees requested their release from the contract and was given an oral one by appellant. Counsel for appellees say that appellees, relying upon this oral release, made no effort to protect themselves against falling prices of real estate and therefore their position was changed. The complaint does not so state and in our opinion the doctrine of equitable estoppel has no application to the facts involved in the instant case. The contention of appellees is that appellant orally agreed after the contract was executed to release appellants from its binding obligation and that as she now refuses to do so, a fraud is perpetrated upon appellees. This promise relates to the purchase by appellees of the lands de-

scribed in the contract, and relates to an interest in lands and the statute of frauds is applicable. *Baker v. Zang,* 275 Ill. App. 146; *McGinnis v. Fernandes,* 126 Ill. 228; *Wheeler v. Frankenthal & Bro.,* 78 Ill. 124; *Morris v. Calumet & Chicago Canal & Dock Co.,* 91 Ill. App. 436. ''The moral wrong of refusing to be bound by a verbal agreement because it does not comply with the statute (of frauds) does not authorize the application of the doctrine of equitable estoppel.'' *Kelly v. Fischer,* 263 Ill. 184.

The order appealed from is reversed and this cause is remanded to the circuit court of Lake county with directions to vacate the order directing the issuance of a temporary injunction and if the bond has been filed and the temporary injunction has been issued to dissolve the temporary injunction.

*Order reversed and cause remanded with directions.*