T. C. HILL v. JONAS H. BROWN.

(Filed 12 March, 1907).

**Supreme Court Decision—Contracts—Dormant Stipulations—Rights.**
There can be no vested right in the decision of the Supreme Court, but such decision is as a dormant stipulation in a contract, construed with reference to the time it was made, and a subsequent overruling of the decision by the same court will not disturb it.

ACTION heard and determined by *Jones J.,* at DUPLIN Superior Court, at November Term, 1906. The Judge found *the facts in accordance with agreement of counsel.* From judgment for plaintiff, defendant appealed.

*Stevens, Beasley & Weeks* for plaintiff.
*H. D. Williams* and *Murray Allen* for defendant.

BROWN, J. It appears from the case agreed that the land·
in controversy was partitioned in 1897 by decree of the
Superior Court of Duplin in a proceeding to which this
plaintiff and defendant, and all the other owners, were par-
ties, except the children of Pallie Whaley. The final decree
confirming the partition was entered 5 March, 1897. In
August, 1903, defendant Brown acquired title to the share
of the Whaley children. It is contended that he is estopped
by the principles laid down in *Carter v. White,* 134 N. C.,
466, from setting up against the plaintiff such outstanding
interest so acquired. It is contended by defendant that (1)
*Carter v. White* was first correctly decided, and the subse-
quent decision is erroneous; (2) a contract valid under a
judicial decision in force when the contract is entered into
cannot be impaired by a subsequent judicial decision.

In an able and learned argument, Mr. Allen, of counsel
for defendant, asks us to overrule the last decision rendered
in *Carter v. White,* 134 N. C., 466. It is not necessary that
we should take that into consideration, as we are with the
defendant upon the second contention, so far as it applies
to the facts of this case, which are on "all-fours" with those
stated in *Carter v. White.* In both cases the defendant in
partition proceedings, after final decree therein, acquired an
outstanding interest from an owner who was not a party, and
attempted to set it up against the plaintiff in such pro-
ceeding.

When the *Carter case* was before this Court at August
Term, 1902, it was held that defendant was not estopped.
It is said in the opinion: "So the plaintiff's contention is
that, by reason of said decree, defendant is estopped from
setting up his interest acquired from Land, notwithstanding
Land was not a party to the special proceeding."

The Superior Court held with the plaintiffs, and this
Court said: "In so holding his Honor was in error." When

the case was considered again at Spring Term, 1904, the purport and general scope of the opinion of 1902 was recognized in both the opinion of the Court and the dissenting opinion of the *Chief Justice.*

Between the promulgation of the two decisions this defendant purchased the outstanding interests of the Whaley children. In so doing we think he is protected by the principles of law set forth in the opinion of this Court in 131 N. C., p. 14, notwithstanding the majority of this Court in 1904 took a different view.

We deduce the well-settled principle from a number of authorities, that the law of contract enters into the contract itself and, in the construction, forms a part of it. It is practically a dormant stipulation in the contract, and it must be enforced as a part of it and as it is construed at the time the contract is made. *Napier v. Jones,* 47 Ala., 96; *Davis v. Montgomery,* 51 Ala., 146; *Herndon v. Neave,* 18 S. C., 354; *Haskett v. Maxey,* 139 Ind., 66; 19 L. R. A., 379. The annotator says, in commenting on the last cited case: "The effect of judicial decisions as the law of a contract made while the decisions are in force, although they are overruled before the time for enforcing the contract, is recognized in the above decision. The justice of this doctrine is apparent."

In *Haskett v. Maxey, supra,* the Court hold: "The construction of a statute of descent established by the decisions of the courts at the time of a quit-claim by heirs claiming under the statute becomes a part of the contract and must govern the rights of the parties as against a different construction thereafter adopted by overruling the former decisions."

In *Farrior v. Mortgage Co.,* 12 L. R. A., 856, the Supreme Court of Alabama says: "Persons contracting are presumed to know the existing law, but neither they nor

their legal advisers are expected to know the law better than the courts, or to know what the law will be at some future day. Any principle or rule which deprives a person of property acquired by him, or the benefit of the contract entered into, in reliance upon and strict compliance with the law in all respects as interpreted and promulgated by the court of last resort at the time of the transaction, and no fault can be imputed to him, unless it be held a fault not to foresee and provide against future alterations in the construction of the law, must be radically wrong. Such a principle or rule of law would clog business transactions, unsettle titles and destroy all confidence in the decisions of the Supreme Court of the State." The principle is recognized by recent decisions of our own Court. In *State v. Bell,* 136 N. C., p. 677, it is applied in a criminal action by *Mr. Justice Connor,* speaking for the Court, in these words: "While it is true that no man has a vested right in a decision of the Court, it is equally well settled that where, in the construction of a contract or in declaring the law respecting its validity, the Court thereafter reverses its decision, contractual rights acquired by virtue of the law as declared in the first opinion will not be disturbed."

In a case of great importance at last term the subject is elaborately considered by *Mr. Justice Walker* and the principle we apply in this case fully recognized and applied there. *Hill v. Railroad,* 143 N. C., 539; 55 S. E. Rep., 854. In that case the learned Justice comments upon *State v. Bell* as follows: "This Court in *State v. Bell* gave practical effect to the rule that the reversal of a precedent should not be allowed to work an injustice, by requiring that the case then under consideration should be tried anew, not according to the principle as then decided, but according to the former adjudication, simply because the party is presumed

to have acted in reliance upon it. Was that not the only fair and proper course to pursue, and would any other have commended itself to our sense of right? The opposite rule would have met with strong condemnation, as being contrary to the plainest principles of justice."

We think, upon well-established authority, supported by sound principles of justice and public policy, that the defendant is not estopped from setting up his interest in the land acquired in 1903. Upon the agreed facts, the judgment of the Superior Court is

Reversed.