S. H. BANKS ET AL. v. TENNESSEE MINERAL PRODUCTS CORPORA-
TION AND H. C. SMITH AND WIFE, BERTIE SMITH.

(Filed 23 March, 1932.)

1. **Minerals B b—Minerals may be conveyed separate from ground surface.**

   Mineral substances beneath the surface of the earth may be conveyed by
   deed distinct from the title to the surface itself.

2. **Minerals C c—Held: owner of surface could not recover damages
   thereto caused by mining feldspar by usual method under facts of
   this case.**

   Where the grantor has acquired by deed the right to the feldspar be-
   neath the surface of the ground with the right of ingress, egress and
   regress, together with the privileges necessary to the mining of the ore,
   he may not be held liable for damage to the surface of the ground in
   extracting the ore when the method used by him was the customary
   and approved method· of mining this particular mineral, and his deed,
   by a proper construction, gave him the right to work the mine by the
   method used.

3. **Same—Where plaintiff fails to show that fence was destroyed by de-
   fendant or with his procurement, etc., he may not recover therefor.**

   Where the plaintiff in his action to recover damages against the opera-
   tor of a feldspar mine for the destruction of a fence upon the surface of
   the land owned by him, in order to recover therefor he must show that
   the fence was destroyed by the defendant or 'with his consent, knowledge
   or procurement.

4. **Contracts B a—Practical construction of contract by parties before
   differences thereunder will be given weight in arriving at intent.**

   In construing a deed to the mineral rights in land the method of mining
   recognized by the original parties before differences between them may
   be received in evidence upon the question of the intent of the parties in
   this respect.

CIVIL ACTION, before *Harwood, Special Judge,* at August Term, 1931,
of YANCEY.

Prior to 27 May, 1919, H. C. Smith was the owner in fee of certain
lands in Burnsville Township, Yancey County. On said date Smith and
wife, by warranty deed, conveyed said land to H. F. Harris. The deed
contained the following reservation: "The mineral interests on and in
all of the above described land south of the following line is hereby
expressly excepted and does not pass under this deed . . . together
with the right of .ingress, regress and egress over and upon the lands
hereby excepted with the necessary mining privileges for the operation
of said mineral rights." On 14 July, 1919, Harris and wife conveyed
the land to Jos. M. Robinson. Said deed contains the following clause:

"The mineral rights, interest and privileges described in the deed from H. B. Smith and Burt Smith to H. F. Harris, dated 27 May, 1919, and recorded in Book of Deeds No. 55, at page 164, Yancey County, and not conveyed, said lands as above described being sold subject to said mineral rights and privileges, reference to which deed is hereby made for description of said mineral rights and privileges retained and held by the said H. C. Smith and Burt Smith." In the warranty clause of said deed the grantor inserts a general covenant of warranty "subject only to the mineral rights hereinbefore referred to." On 6 September, 1919, Robinson conveyed the land to W. B. Banks. The Banks deed contains the following clause: "The mineral rights, interest and privileges described in deed from H. C. Smith and wife to H. F. Harris, dated 27 May, 1919, . . . are not conveyed, said lands as above described being sold subject to said mineral rights and privileges," etc. The warranty clause contains the following language: "Except the mineral rights noted above," etc. W. B. Banks died and the plaintiffs are his heirs at law.

The evidence tended to show that on 15 February, 1928, Smith and wife leased to their codefendant, Tennessee Mineral Products Corporation, the said land, and that said corporation went into possession of said land and mined feldspar thereon. Feldspar sometimes comes close to the surface and sometimes it is six to ten feet beneath the surface. It is mined by what is described as "pit mining"; that is to say, by digging horizontal holes or pits in the earth. Some of these pits were 100 feet wide and 200 feet deep. There was evidence tending to show that the father of plaintiffs had mined the land during his lifetime.

The cause of action alleged by plaintiffs was that the defendants had dug many pits or holes in the land and that the waste material, while placed upon the old dumps, had resulted in increasing the area of dumps and thus rendering the surface of the land less valuable. The testimony tended to show that six or seven acres of land was destroyed for agricultural purposes by reason of the mining operations, and that the plaintiffs had suffered material damage by reason of such operations. The plaintiffs contend that the defendants were required by law to take the mineral or feldspar without injuring the surface of the land, and that, therefore, it was the duty of the defendants to provide subjacent support for the surface. There was evidence that a short time prior to the entry of defendant, Tennessee Mineral Products Corporation, the plaintiffs had constructed a wire fence of about 2080 feet upon the land, and that this fence had been completely destroyed during the mining operations of defendant, Smith.

At the conclusion of the evidence for plaintiffs the trial judge sustained a motion for nonsuit as to all defendants and from judgment in accordance therewith, plaintiffs appealed.

*Charles Hutchins for plaintiffs.*
*Watson & Fouts and C. D. Bailey for defendants.*

BROGDEN, J. The plaintiffs own the surface of a tract of land and the defendants own the minerals or feldspar beneath the same. Hence the question of law presented is: What are the relative rights of the parties?

"That mineral substances beneath the surface in the earth may be conveyed by deed distinct from the right to the surface itself is now well settled." *Outlaw v. Gray,* 163 N. C., 325, 79 S. E., 676; *Hoilman v. Johnson,* 164 N. C., 268, 80 S. E., 249. This Court has not been called upon to consider many questions growing out of the mining industry, and hence no decision has been called to our attention indicating that the principle of sublateral or subjacent support has ever been adopted in this State, or that occasion had ever arisen to discuss the proposition. The general principle deduced from the decisions of states where the mining industry has flourished is that the owner of the surface has the right of subjacent support unless such right has been waived in specific terms or terms reasonably implying such waiver. 40 C. J., p. 1195, *et seq.; Hall v. Harvey Coal & Coke Co.,* 108 S. E., 491; *Continental Coal Co. v. Connellsville By-Products Coal Co.,* 138 S. E., 737; *Georgia Iron Ore Co. v. Jones,* 111 S. E., 372; *Cole v. Signal Knob Coal Co.,* 122 S. E., 268; *Goody Koontz v. White Star Mining Co.,* 119 S. E., 862; *Griffin v. Fairmont Coal Co.,* 53 S. E., 24. The various opinions in the *Griffin case, supra,* present every phase of the question together with the authorities supporting the various conclusions and deductions relating to the subject.

In the case at bar the final solution of the question involved must rest upon a construction of the deed in order to determine the intention of the parties to the conveyance. The deed held by the plaintiffs recites that "said land, as above described, being sold subject to said mineral rights and privileges," etc. The original deed from Smith to the grantor of the plaintiffs not only reserved the absolute ownership of the mineral or feldspar beneath the surface of the land and the right of ingress, egress and regress, but also "the necessary mining privileges for the operation of said mineral rights." A feldspar operation, as described in the evidence, is properly conducted by a method known as pit mining. It is not a process of tunneling beneath the surface for substantial distances, but apparently consists of digging horizontal holes in the

ground. Indeed, the evidence tends to show that upon the tract of land in question the feldspar was frequently found close to the surface. Hence the expression in the deed "operation of said mineral rights" must be construed in the light of accepted and prevailing methods of mining feldspar, and such operation does not involve the principle of subjacent support, provided, of course, that the mining operation is conducted in a careful and reasonable manner so as to prevent interference with the surface of the land except insofar as such interference may be necessary in the reasonable and careful prosecution of the mining operation. Indeed, the plaintiffs did not contemplate the application of the principle of subjacent support. One of the plaintiffs was asked the following question: "Do you think it would be practical to go in there and put a roof over the spar when the feldspar comes within a foot or two of the surface?" The witness answered: "No sir, I don't. I didn't do it when I mined and was interested in the property and the surface. I dug just the same as anybody else and what I wanted was to get the spar with the least expense." The practical construction placed upon a written instrument by the parties thereto before a controversy arises, is ordinarily given great weight by the courts in arriving at the true meaning and intent of the language employed in the contract. *Wearn v. R. R.,* 191 N. C., 575, 132 S. E., 576. Furthermore, the deed of plaintiffs for the surface expressly provides that such surface is held "subject to said mineral rights and privileges."

There was evidence that the plaintiffs had erected about 2,000 feet of wire upon the land and that said wire had been destroyed during the time the defendant Smith was conducting mining operations thereon, but there is no evidence that said wire was destroyed by Smith or with his knowledge, consent or procurement.

Upon the whole case, the Court is of the opinion that the judgment of nonsuit was properly entered.

Affirmed.