VESSIE ENGLISH AND FRED ENGLISH v. HARRIS CLAY COMPANY.

(Filed 10 October, 1945.)

**1. Minerals and Mines § 1—**

While the general rule, deduced from the decisions of States where subterranean mining has flourished, is that the owner of the surface has the right to subjacent support unless such right has been waived, the character of the mineral to be recovered, the manner of its occurrence, the known local custom of open or pit mining for the mineral involved render this doctrine inapplicable to the recovery of feldspar and kaolin, near the surface.

**2. Minerals and Mines § 5—**

In an action to recover damages to surface soil and superstructures, where all the evidence tended to show that plaintiff acquired title, by conveyance excepting and reserving all the minerals and mining rights and also a right of way granted previously to defendant, that kaolin occurred on the property in a deposit under a soft top soil about six feet deep, that the custom of open or pit mining for the recovery of this and similar minerals was in vogue in that locality and this custom known to plaintiff, and that defendant took down the structures on the land, piece

by piece, stacking and storing them on the premises and protecting them from the weather, and then proceeded to strip and remove the surface soil and recover the mineral, leaving the premises in that condition, judgment as of nonsuit was proper.

APPEAL by plaintiffs from *Bobbitt, J.*, at July Term, 1945, of MITCHELL.

This is an action to recover damages for injury sustained by the owners of the surface rights in the removal of the surface soil and destruction of superstructures thereupon by the owner of mineral rights in mining for the recovery of kaolin, a subsurface mineral.

On 24 February, 1914, the plaintiffs herein purchased from Eli Sparks and wife about four acres of land, and now hold by deed containing the following exceptions:

"Excepting and reserving all the minerals and mining rights and also a right of way for a flume line heretofore granted to the Harris Clay Company."

The plaintiffs built upon the premises what is described as "a six room frame house and garage," dug a well, planted an orchard, built another small house, fenced a garden. All of this plaintiffs complain was destroyed by the defendant company in recovering the kaolin deposited underneath the surface and superstructures, removing a great quantity of top soil and leaving the land a waste.

It appears from the evidence that the kaolin occurred in a deep deposit, at least forty-five feet thick, within this small area, under a stratum of soft top soil about six feet deep and the superstructures thereupon. There is evidence here that the custom of open or pit mining, or mining by removal of the top soil, for the recovery of this and similar minerals was in vogue in that locality.

There is a difference asserted by the parties as to the character of the superstructures, which is not material to decision. It appears that the buildings were not occupied at the time of their removal.

The evidence discloses that the defendant, conceiving it to be necessary to the recovery of the mineral, took down the structures above mentioned, removing them piece by piece, and stacking and storing them upon the premises, providing suitable covering to avoid injury by the weather. Defendant thereupon proceeded to strip and remove the burden of surface soil from the kaolin, recovered the mineral, and left the premises in that condition.

At the hearing before Judge Bobbitt at Mitchell Superior Court, upon motion of the defendant, a judgment of nonsuit was entered, and plaintiffs appealed.

*R. W. Wilson for plaintiffs, appellants.*
*John C. McBee and E. P. Stillwell for defendant, appellee.*

SEAWELL, J.   From plaintiffs' evidence it appears that they bought of Eli Sparks the surface estate in the small parcel of land described in the pleading, subject to a prior grant of the mineral rights therein and right of mining the same, now held through *mesne* conveyance by the defendant.   The exceptions and reservations noted above were intended to protect the prior grant.

The plaintiffs claim that it was not known at the time that there were any minerals on or within the land.   They were, however, put on notice by the exception and reservation that there might be such minerals, and cannot plead, in avoidance of the reservation, surprise that the mineral should be kaolin, to be mined in accordance with the method in vogue in the locality.

The evidence is reasonably clear that the kaolin was mined or recovered in that locality by open or pit mining—that is, by removing the surface and digging up the clay, rather than tunneling underground, as is usually done for coal and other subterranean minerals.   Defendant contends that the rights of the parties under the grants and reservations must be construed with reference to this fact.   We are concerned principally with the subject of subjacent support.

The obligation of such support in mining operations, where the surface estate and the mining rights have been severed and are owned by different parties, has been stated by textwriters with such positiveness and the rule has been credited with such universality as to incite investigation of possible exceptions or conditions outside the experience of common law, through which the rule evolved.   Examining the decisions cited in support of the texts, we find that practically one hundred per cent of them relate to subterranean or tunnel mining and perhaps eighty per cent to mining of coal, where such support may be readily afforded and parties may well be presumed to have contracted with reference to the rule.   Indeed, the duty of subjacent support in ordinary cases might well be deduced from the maxim *sic utere tuo ut alienum non laedas,* and some authorities so hold.   *Griffin v. Fairmont Coal Co.,* 59 W. Va., 480, 53 S. E., 24; *Simmons v. Star Coal and Coke Co.,* 113 W. Va., 309, 1933, 167 S. E., 737; W. Va. Law Q. 39 :538.   But the great majority, without too much attention to the manner in which the parties have come into the relationship, hold that when the surface rights and mineral rights have been severed and belong to different parties, subjacent support in operations to recover the mineral is a natural or property right incident to the ownership of the surface or "dominant" estate.   Thompson, Real Prop-

erty, Permanent Ed., sec. 609; Tiffany, Real Property, 3d Ed., sec. 754. Frequently, the comparative worthlessness of the surface estate and the economic value to the public of the mining operations have been urged as modifying the rule, with indifferent success. U. Pa. L. Rev. 77 :703, and citations. Especially on the question of waiver of the subjacent support, the rigid requirement that the waiver must be clearly expressed or necessarily implied has been maintained, although as applied in numerous situations it reverses the ordinary rule that the language used is to be more strongly construed against the grantor and has been used to bar consideration of attendant circumstances strongly supporting an implied waiver.

In *Noonan v. Pardee,* 200 Pa., 474, 50 A., 255, the logical end of the doctrine is thus stated : "What the surface owner has the right to demand is sufficient support, even if to that end it be necessary to leave every pound of coal untouched under his land"; or, as elsewhere expressed, all that the owner of the minerals gets, in the absence of a clear waiver of the right of subjacent support, is whatever he can get without injury to the surface in its natural state. An interesting discussion of these matters may be found in U. of Pa. L. Rev. 68 :399; U. of Pa. L. Rev. 77 :703.

In this situation it seems to us that much of the learning relating to subjacent support is of little avail on the present inquiry, unless we undertake the task of fitting a square peg into a round hole. The exceptional facts and conditions met with here—the character of the mineral to be recovered, the manner of its occurrence, the mode of mining it in vogue in the locality, a knowledge of which is imputable to the surface owner, render many of the "musts" of subterranean mining, including the duty of subjacent support, of more than doubtful application; and if applicable at all under the circumstances of this case, those circumstances and conditions are sufficient upon a fair construction to constitute the language employed in the exceptions and reservations in the deeds a waiver of that right.

Kaolin is a fine, soft, white clay, resulting from the decomposition of feldspar, and is used for various commercial purposes, especially in the manufacture of porcelain. Feldspar, itself a component of most crystalline rocks, is found freely where upheavals and displacements of natural stratification and subsequent erosion have brought such rock near the surface and decomposition has taken place. Its occurrence is, therefore, similar to that of its parent mineral, feldspar.

*Banks v. Mineral Corp.,* 202 N. C., 408, 163 S. E., 108, deals with feldspar mining on a factual situation which, in principle, is not dis-

tinguishable from the case at bar. In that case *Justice Brogden,* speaking for the Court, said (loc. cit. p. 410) :

"This Court has not been called upon to consider many questions growing out of the mining industry, and hence no decision has been called to our attention indicating that the principle of sublateral or subjacent support has ever been adopted in this State, or that occasion had ever arisen to discuss the proposition. The general principle deduced from the decisions of states where the mining industry has flourished is that the owner of the surface has the right to subjacent support unless such right has been waived in specific terms or terms reasonably implying such waiver. 40 C. J., p. 1195, *et seq.; Hall v. Harvey Coal & Coke Co.,* 108 S. E., 491; *Continental Coal Co. v. Connellsville By-Products Coal Co.,* 138 S. E., 737; *Georgia Iron Ore Co. v. Jones,* 111 S. E., 372; *Cole v. Signal Knob Coal Co.,* 122 S. E., 268; *Goody Koontz v. White Star Mining Co.,* 119 S. E., 862; *Griffin v. Fairmont Coal Co.,* 53 S. E., 24. The various opinions in the *Griffin case, supra,* present every phase of the question together with the authorities supporting the various conclusions and deductions relating to the subject. . . . The deed held by the plaintiffs recites that 'said land, as above described, being sold subject to said mineral rights and privileges,' etc. The original deed from Smith to the grantor of the plaintiffs not only reserved the absolute ownership of the mineral or feldspar beneath the surface of the land and the right of ingress, egress and regress, but also 'the necessary mining privileges for the operation of said mineral rights.' A feldspar operation, as described in the evidence, is properly conducted by a method known as pit mining. It is not a process of tunneling beneath the surface for substantial distances, but apparently consists of digging horizontal holes in the ground. Indeed, the evidence tends to show that upon the tract of land in question the feldspar was frequently found close to the surface. Hence the expression in the deed 'operation of said mineral rights' must be construed in the light of accepted and prevailing methods of mining feldspar, and such operation does not involve the principle of subjacent support . . . Indeed, the plaintiffs did not contemplate the application of the principle of subjacent support." The plaintiffs were denied recovery.

We regard this decision as embodying a correct conclusion of law, and it is controlling in the case at bar.

It only remains to say that it was the duty of the defendant to use due care in recovering the mineral so as not to injure the surface any more than necessary. If the complaint could be construed as stating any cause of action for such negligent injury, the evidence failed to support it.

The judgment of nonsuit was proper and is

Affirmed.