NANTAHALA POWER AND LIGHT COMPANY, PETITIONER v. OZE E. HORTON AND WIFE, BESSIE G. HORTON; J. G. STIKELEATHER, JR. AND WIFE, DOROTHY STIKELEATHER; RUTH LANE ATKINSON AND HUSBAND FRANK C. ATKINSON; HERMAN G. NICHOLS AND WIFE, ELIZABETH SHUFORD NICHOLS; AND ANDREW GENNETT, EXECUTOR OF THE ESTATE OF CARTER T. GENNETT, DECEASED, RESPONDENTS.

(Filed 14 January, 1959.)

**1. Deeds § 14—**

A deed to land excepting all mineral interest and reserving same to grantors severs the mineral and mining rights from the surface rights.

**2. Reference § 14a—**

Even though a party to a compulsory reference by proper exceptions and tender of issues preserves his right to jury trial upon the written evidence taken before the referee, if such evidence is insufficient to raise issues of fact, exception to the refusal of a jury trial is untenable.

**3. Eminent Domain § 14— Claimant failing to offer evidence as to value of their interests taken by the condemnation are entitled to nominal damages only.**

Condemnor paid the amount of damages assessed by the jury into court, and the conflicting claims of respondents in the fund was referred to a referee. One group of respondents claimed as successors to the grantee in the deed from the common source of title, and the other group claimed under the reservations of the mineral and water power rights set forth in that deed. *Held:* It was incumbent upon the contestants to establish their respective interests in the fund, and upon failure of the claimants under the reservations and exceptions in the deed to offer any evidence as to the value of the mineral rights or the water power rights lost by reason of the condemnation or evidence upon which the jury based its verdict in the condemnation proceeding, judgment that they should recover only nominal damages and that the balance of the recovery should be paid to the owners of the land is without error.

**4.  Deeds § 14—**

> The reservation of the water power rights by grantors vests in grantors and their successors at most such water rights as are susceptible of development within the boundaries of the tract conveyed, and cannot entitle them to any part of the compensation paid for the condemnation of a part of the tract of land for the ponding of water incident to the development of a power site some distance downstream from the tract.

**5.  Appeal and Error § 40—**

> Where both parties appeal, the exceptions of the successful party need not be considered when no prejudicial error is found on the appeal of the other party.

Cross appeals by respondents Horton and respondents Stikeleather, et al., from *Campbell, J.,* February Term, 1958, of JACKSON.

Nantahala Power and Light Company (hereafter called Power Company), petitioner, is not a party to or interested in the disposition of this appeal.

The controversy is between respondents Oze E. Horton and wife, Bessie G. Horton (hereafter called respondents Horton), on the one hand, and respondents J. G. Stikeleather, Jr., and wife, Dorothy Stikeleather, Ruth Lane Atkinson and husband, Frank C. Atkinson, Herman G. Nichols and wife, Elizabeth Shuford Nichols, and Andrew Gennett, Executor of the Estate of Carter T. Gennett (hereafter called respondents Stikeleather, et al.), on the other hand, and involves their respective claims to a fund of $11,500.00 now held by the Clerk of the Superior Court of Jackson County.

On April 4, 1952, the Power Company instituted this condemnation proceeding under G.S. Ch. 40, Art. 2. In separate answers respondents Horton and respondents Stikeleather, et al., made conflicting allegations as to their respective interests in a tract of 557 acres in Canada Township, Jackson County, which included the 90.4 acres referred to below.

When the proceeding came on for trial at February Term, 1954, before *Judge Patton* and a jury, all respondents stipulated ". . . that the only question involved and for trial in the action, was the amount of compensation the respondents were entitled to recover of the petitioner, Nantahala Power and Light Company, for the taking and condemnation of the lands described in the petition filed herein, for the uses and purposes stated in said petition, . . ." The court submitted one issue, to wit: "What compensation are respondents entitled to recover of the petitioner on account of the taking of the land described in the petition, and as compensation for the injury, if any, to the remaining land?" The jury answered: "$11,500.00."

The judgment entered at February Term, 1954, in accordance with said verdict, adjudged that, upon payment thereof: (1) The Power Company had acquired by condemnation and owned, for the duration of its corporate existence, an easement in the four parcels or tracts of land on the East Fork of Tuckaseegee River described in its petition, a total of 90.4 acres, for the following uses and purposes: "To flood and inundate said lands with the lake or reservoir of the petitioner, and to use said lands for any other necessary and essential hydro-electric power purpose or purposes, . . . in order that the petitioner may construct, operate and conduct said Bear Creek Hydro-Electric Development or Project on the East Fork of Tuckaseegee River and its tributaries in River and Canada Townships, Jackson County, North Carolina, and carry on its business in generating, distributing and selling electric current and electric power to its customers and the general public; . . ." (2) ". . . that the respondents, and each of them, shall be divested and barred, as provided by law, of all right, estate and interest in the real estate described in the petition for the uses and purposes aforesaid."

The judgment ordered that, upon payment by the Power Company, the clerk hold the $11,500.00 "pending the settlement and determination of the rights of each of the respondents respectively to said funds," and retained the cause for adjudication of the respective rights of the rival claimants to said $11,500.00 fund.

After payment by the Power Company, respondents Stikeleather, et al., by petition dated April 23, 1955, and respondents Horton, by answer thereto, made conflicting allegations as to their respective interests in said $11,500.00 fund.

In said pleadings, respondents Stikeleather, et al., prayed that the court award to them, to the exclusion of respondents Horton, and respondents Horton prayed that the court award to them, to the exclusion of respondents Stikeleather, et al., the entire fund of $11,500.00.

It was admitted that the Power Company's dam across the East Fork of Tuckaseegee River, which impounded the waters thereof and inundated the 90.4 acres, was *downstream* from the 557-acre tract.

It was admitted that the inundation of the 90.4 acres caused the remainder of the 557-acre tract "to be severed from road and highway connections." Respondents Stikeleather, et al., alleged that this completely isolated and rendered "almost completely worthless" the remainder of said 557-acre tract, while respondents Horton averred that it "greatly decreased" its value.

The rights of all respondents in the 557-acre tract depend upon the legal effect of a deed dated May 10, 1938. The grantors in said deed conveyed to the grantees, their heirs and assigns, "subject to the ex-

ceptions, limitations and reservations made below," the said 557-acre tract. Following the description, said deed provides:

"There is excepted from the provisions of this deed, and the parties of the first part reserved to themselves, their heirs, executors and assigns, all the mineral interest of any and every kind with full mining privileges in and upon said boundary of land, with the rights to the parties of the first part, their heirs and assigns, of ingress, egress and regress, and with the full right to do and perform each and every act necessary for the enjoyment of the mineral rights reserved, and for the proper mining and marketing of said minerals; there is further excepted from the provisions of this deed, and the parties of the first part reserved to themselves, their heirs, executors and assigns, all water power with full rights of storage of water on said boundary, including the right to build such dams on said boundary as they may care to build and to raise said dams, or lower same at their pleasure, and further reserve the right to divert the water on said property so as to pass above the ground, or upon the surface of the ground, or beneath the surface of the ground, as they may desire, and further reserve the right to the natural flowage of the water running through and along said property in its accustomed channel, undiminished in quantity, and unimpaired in quality; the parties of the first part, for themselves, their heirs and assigns, further reserve the right to build, maintain, alter, and rebuild on said property all power houses, shops, tenant houses and other buildings on said property necessary to the enjoyment of the right reserved, and reserve the right to build, maintain, alter and rebuild on said property all roads, bridges, transmission lines, telephone lines, and all other devices necessary to the enjoyment of the right reserved herein, and further reserve the right to use from said property such stone and dirt as may be reasonably necessary in the building or maintaining of said dams, buildings, bridges, and roadways, and to remove from said land any trees or other obstacles which may in any way obstruct the parties of the first part, their heirs and assigns, in the proper enjoyment of their rights herein reserved, and the parties of the first part and administrators, and assigns, and successors in title shall never be required to pay anything for the exercise of the rights reserved.

"This deed conveys a certain interest above described to the parties of the second part without warranty."

Prior to said deed, the grantors therein owned the 557-acre tract in fee simple.

It was admitted that respondents Horton succeeded to all rights reserved to the grantors in said deed and that respondents Stikeleather,

et al., succeeded to all rights conveyed to the grantees therein.

The conflicting allegations relate (1) to the legal significance of said "exceptions, limitations and reservations," and (2) to the value of the mineral and water power rights.

At October Term, 1955, *Judge Dan K. Moore,* reciting that he acted under G.S. 40-23, entered an order of compulsory reference wherein T. M. Jenkins, Esq., was appointed as referee "to ascertain the facts, to hear the evidence and respective claims of the respective parties, and report his findings of fact and conclusions of law to this Court." All respondents objected and excepted to said order of compulsory reference and demanded a jury trial upon issues tendered.

After hearing evidence offered by the respective parties, the referee, on May 21, 1956, reported his findings of fact and conclusions of law.

Respondents Horton filed exceptions numbered 1-12, inclusive, to designated findings of fact, and exceptions numbered 1-4, inclusive, to designated conclusions of law; and they prayed that the referee's report be set aside and that the cause be submitted to and determined by a jury on the issue theretofore tendered.

Respondents Stikeleather, et al., did not except to any of the referee's findings of fact but filed exceptions numbered 1-3, inclusive, to the referee's conclusions of law. They prayed that the conclusions of law to which their three exceptions were directed be set aside and that the report of the referee, in all other respects, be adopted and confirmed by the court.

At February Term, 1958, *Judge Campbell,* being of opinion that "only questions of law are presented for determination by the Court," denied request by respondents Horton for a jury trial on their tendered issue; and, after consideration of the evidence offered before the referee, including the exhibits, entered judgment embracing the matters set out below.

*Judge Campbell* sustained exceptions numbered 1, 5, 11 and 12, filed by respondents Horton to the referee's findings of fact, but overruled each and every of their exceptions to the referee's conclusions of law. Also, he overruled each and every of the three exceptions of respondents Stikeleather, et al., to the referee's conclusions of law.

Thereupon, "having confirmed that portion of the Referee's Report holding that Oze E. Horton and wife, Bessie G. Horton, are entitled to a nominal sum from the proceeds of said recovery, and which nominal sum the Court hereby fixes in the amount of Five ($5.00) Dollars, the Court concludes and holds that the balance of said recovery over and above the sum of $5.00 herein awarded to Oze E. Horton and wife, Bessie G. Horton, to wit, $11,495.00 less the sum of $350.00, heretofore paid . . . to the Referee for his services . . . should be paid

to" respondents Stikeleather, et al. Judgment was entered directing said clerk to disburse the $11,500.00 in accordance therewith.

Respondents Horton excepted and appealed, assigning as error (1) rulings on evidence admitted by the referee, (2) each and every adverse ruling on their exceptions to the referee's findings of fact and conclusions of law, (3) the refusal of a jury trial on their tendered issue, and (4) the conclusion of law quoted above.

Respondents Stikeleather, et al., excepted and appealed, assigning as error each and every adverse ruling on their exceptions to three of the referee's conclusions of law.

*Morgan, Ward & Brown for respondents, Horton, appellants and appellees.*

*Ward & Bennett for respondents, Stikeleather, et al., appellants and appellees.*

BOBBITT, J.   Whatever rights the grantors in said deed of May 10, 1938, reserved by the "exceptions, limitations and reservations" therein set forth, vested in respondents Horton when the condemnation proceeding was instituted. Subject thereto, respondents Stikeleather, et al., owned the 557-acre tract in fee simple.

Unquestionably, said reservations and exceptions severed the minerals and mining rights from the surface rights. *Vance v. Guy,* 223 N.C. 409, 27 S.E. 2d 117, and cases cited; *English v. Clay Co.,* 225 N. C. 467, 35 S.E. 2d 329.

Respondents Stikeleather, et al., on their appeal, challenge the validity of said "exceptions, limitations and reservations" in respect of water power rights. We accept, for purposes of this appeal, the referee's conclusion of law, adopted by the court, to which respondents Horton did not except, to wit, that said reservations and exceptions were sufficient, "in form and substance, in law, to withdraw from the grant and to reserve in the grantors the water power on said land, within its boundaries, and together therewith the easements recited in connection therewith."

At February Term, 1954, all respondents, by stipulation, deferred their controversy, *inter se,* and made common cause against the Power Company in the trial that resulted in jury award of $11,500.00. It is noted that the evidence upon which the jury based its verdict is not before us, nor was it before the referee or court below. What elements of damages were considered by the jury? The record provides no answer.

Under these circumstances it was incumbent upon the contestants to establish their respective interests in the $11,500.00 fund.

Upon plenary competent and uncontradicted evidence, the referee found, *inter alia,* that the remainder of the 557-acre tract, after excluding the 90.4 acres, consisted of forest lands with marketable timber of the fair market stumpage value of $24,000.00 and with wood of the fair market stumpage value of $10,704.00, and that the only means of access thereto had been destroyed by the flooding of roads within the 90.4 acres. Based largely on these particular findings, the referee found that the damage to the fee in the remaining 466.6 acres caused by the condemnation of the 90.4 acres was $37,280.00. (Note: The referee found that there was no marketable timber on the 90.4 acres but made no finding as to the fair market value of the 90.4 acres.)

The referee found "that the taking and appropriating of the 90.4 acres and it inundation" by the Power Company destroyed all mineral and water power rights of respondents Horton therein. But the referee also found: (1) ". . . there is no evidence of any actual value of the mineral interest condemned and appropriated or on the remainder of the 557-acre tract." (2) ". . . the portions of the East Fork Tuckaseegee River and Robinson Creek, either separately or jointly, within the boundaries of the 557-acre tract alone, was not susceptible of practical economical hydro-electric water power development and . . . as such had no actual marketable value."

Respondents Horton complied carefully with all procedural requirements to reserve their right to a jury trial. *Bartlett v. Hopkins,* 235 N.C. 165, 69 S.E. 2d 236; *Brown v. Clement Co.,* 217 N.C. 47, 6 S.E. 2d 842; *Booker v. Highlands,* 198 N.C. 282, 151 S.E. 635. They were entitled to a jury trial "upon the written evidence taken before the referee" (G.S. 1-189) *if* it contained evidence that the easement condemned by the Power Company caused more than nominal damages in respect of mineral and water power rights.

1. As to minerals and mining rights, the only evidence offered in behalf of respondents Horton was the testimony of respondent Oze E. Horton. He testified that he had leased a mica mine, "located on a little knob not far below the Island Ford," (within the 90.4 acres) to one R. G. Parker "about 1939 and 1940"; that he thought Parker "had it about two years," but did not know how long it was actually operated or whether the operation was profitable or unprofitable; that he received a straight rental; and that he received such rental (no amount stated) during the years "1938, 1939 or 1940."

He testified: "I testified today that there had been no operation at all on mica since approximately 1939, and that I didn't know how much mica they got out. It is correct that I don't know anything about how long they mined there and didn't find any mica. It is correct that

I said that I didn't know whether or not there was any mica up there that could be found on April 4, 1952." Again: "I said that I don't know that there was a stick of mica in that mine that could be gotten out." Again: "I have not tested elsewhere on the place for minerals."

There was no evidence that the Island Ford Mine contained a mica deposit of value or that the mine had ever been operated profitably or was susceptible of profitable operation.

. Booth Wood, a witness for respondents Stikeleather, et al., testified that he worked for Parker when he had the lease but "we quit on account of we couldn't get any mica."

2. No evidence was offered in behalf of respondents Horton as to the value of their water power rights. Evidence offered by respondents Stikeleather, et al., tended to show the course and fall of the East Fork of the Tuckaseegee River and of Robinson Creek, the character of the terrain, etc., within the boundaries of the 557-acre tract. T. A. Cox, witness for respondents Stikeleather, et al., whom the court found to be an expert hydro-electrical engineer, testified that in his opinion there was "no practical commercial water power that could be developed on the Horton tract on the Tuckaseegee River."

Careful scrutiny of the evidence impels the conclusion that there was no evidence sufficient to support a finding that respondents Horton sustained more than nominal damages on account of the destruction of their mineral and water power rights.

Even so, respondents Horton stress their contention that, since they owned the water power rights within the 557-acre tract, all that the Power Company acquired by condemnation were *the identical* rights they owned. Hence, their argument runs, they should receive all of the $11,500.00 the Power Company was required to pay. While ingenious, this contention rests on a false premise.

The said "exceptions, limitations and reservations," when considered in the light most favorable to them, vested in respondents Horton only such water rights as were susceptible of development *within the boundaries* of the 557-acre tract. The easement condemned gave the Power Company the right to build a dam on its property downstream from the 557-acre tract and thereby impound waters which would flood the 90.4 acres and other upstream lands. Respondents Horton owned no such property and had no such rights. In this connection, it is noted that respondents Horton were entitled to compensation solely on the basis *of the loss* they sustained by reason of the condemnation. *Light Co. v. Moss,* 220 N.C. 200, 205, 17 S.E. 2d 10.

In the absence of evidence sufficient to support a finding that respondents Horton sustained *more than nominal damages,* respondents

Stikeleather, et al., owners of the fee, were entitled to the $11,500.00 fund.

Each assignment of error made by respondents Horton has been carefully considered. None discloses prejudicial error. It is noted that respondents Horton, in their brief, do not direct their argument to each of their several assignments of error but generally to the matters discussed in this opinion.

It is noted that none of the assignments of error raise, hence we do not pass upon, this interesting question: Whether, under the circumstances, the adjudication of the rights of the respective respondents to the $11,500.00 should have been based on the evidence on which the jury at February Term, 1954, based its verdict.

The basis of decision obviates discussion and decision of serious questions raised on the appeal of respondents Stikeleather, et al., as to the validity of said "exceptions, limitations and reservations," in respect of water power rights; for the judgment, which is in their favor, is affirmed.

Affirmed.