Faucette v. Zimmerman

———————————

MARCUS D. FAUCETTE AND LELIA C. FAUCETTE v. FRANK DAVID ZIMMERMAN AND HELEN KAY ZIMMERMAN

No. 8518SC437

(Filed 4 February 1986)

1. **Rules of Civil Procedure § 53— compulsory reference—right to jury trial**

    When a court orders a compulsory reference, a party preserves his right to trial by complying with the procedural steps outlined in Rule 53, N. C. Rules of Civil Procedure, but the party is entitled to trial by jury only if the evidence before the referee was sufficient to raise an issue of fact.

2. **Boundaries § 15.1; Rules of Civil Procedure § 53— processioning proceeding—compulsory reference—no issue of fact—no right to jury trial**

    In a processioning proceeding where compulsory reference was ordered, the evidence before the referee regarding the location of the true boundary line was insufficient to raise an issue of fact, and defendants were therefore not entitled to a jury trial, though they properly preserved their right, where the evidence consisted of inconsistent testimony of defendants' witnesses as to what they remembered or had been told about the location of missing stones, but the disputed boundary could be determined by two separate surveys based on calls in two separate deeds.

3. **Rules of Civil Procedure § 53— referee—issue not in pleadings—issue properly considered**

    A referee could properly hear evidence on the issue of adverse possession even though the issue was not part of the formal pleadings, since the

referee has authority to resolve issues not contained in the pleadings at any stage of the action.

**4. Adverse Possession § 3; Rules of Civil Procedure § 53— compulsory reference —mistaken possession adverse—question of fact—right to jury trial**

In a processioning proceeding where the court ordered compulsory reference, evidence before the referee was sufficient to raise an issue of fact regarding defendants' claim of adverse possession and defendants were therefore entitled to a jury trial where the referee's conclusion that defendants' possession of the disputed area was by mistake and therefore not adverse was erroneous in light of *Walls v. Grohman*, 315 N.C. 239, holding that mistaken possession is adverse, and that holding applied to this case which was then pending on appeal.

APPEAL by defendants from *Albright, W. Douglas, Judge.* Judgment entered 11 January 1985 in Superior Court, GUILFORD County. Heard in the Court of Appeals 30 October 1985.

On 7 January 1983 plaintiffs petitioned the Clerk of Superior Court to establish the boundary line between two adjacent tracts of land located in Guilford County pursuant to G.S. 38-1 to 38-4. On 3 June 1983 defendants filed a response to the special proceeding. Defendants alleged therein a different boundary line as the true boundary line. The Honorable Esther B. Sharpe, Assistant Clerk of Superior Court, entered judgment on 9 August 1983 in favor of the plaintiffs as to the location of the property lines. On 16 August 1983, defendants gave notice of appeal and simultaneously requested a trial by jury. On 1 November 1983 plaintiffs filed a motion requesting an order of compulsory reference pursuant to Rule 53(a)(2), N.C. Rules of Civ. P. On 23 November 1983 defendants filed a motion seeking leave of court to amend their response to include the alternative defense of adverse possession of the disputed area should plaintiffs prevail as to the location of the boundary line. On 5 December 1983 Judge W. Douglas Albright, after a hearing with both parties represented by counsel, entered an order of compulsory reference. On 29 March 1984 Judge Peter W. Hairston entered an order denying without prejudice defendants' motion to amend their response. On 14 November 1984 Referee Ralph A. Walker submitted his report to the Superior Court of Guilford County and recommended therein that the court adopt the report and enter judgment in conformance therewith. On 28 November 1984 plaintiffs filed a motion for confirmation of the referee's report and recommendations. On 14 December 1984 defendants filed exceptions to the referee's re-

port, reasserting their demand for a jury trial on each proposed issue. On 11 January 1985 judgment was entered in favor of plaintiffs, adopting the referee's report and concluding that the issues proposed by defendants were inappropriate based upon the exceptions taken and that plaintiffs were entitled to judgment as a matter of law. Defendants appeal.

*Falk, Carruthers & Roth, P.A., by Allen Holt Gwyn, Jr. and Robert A. Ford, for plaintiff appellees.*

*Luke Wright and James W. Workman, Jr., for defendant appellants.*

JOHNSON, Judge.

Plaintiffs initiated a processioning proceeding pursuant to G.S. 38-1 to 38-4. Proper pleadings were filed by both parties and a full evidentiary hearing was conducted by the Clerk of Superior Court. Upon a judgment entered in favor of plaintiffs, defendants made timely appeal to Superior Court, Guilford County.

On 5 December 1983 the court conducted a hearing in the presence of counsel regarding plaintiffs' 1 November motion for a compulsory reference and ordered the appointment of a referee to hear evidence and file a report as to all pending issues. The referee's report, filed 15 November 1984, set forth findings of fact, conclusions of law, and a recommendation to the court. The court subsequently adopted the referee's report in full and, consistent with the report, held in favor of plaintiffs. When the referee's report is adverse to a party, that party may preserve his right to jury trial pursuant to Rule 53(b), N.C. Rules Civ. P. It is undisputed that defendants properly preserved their right to a jury trial.

[1]   The main issue on appeal is whether, by properly preserving their right to trial by jury, defendants are actually entitled to a jury trial. The North Carolina Constitution specifically preserves the right to trial by jury with respect to "all controversies at law respecting property." N.C. Const. art. I, sec. 25. When a court orders a compulsory reference, a party preserves his right to trial by complying with the procedural steps outlined in Rule 53. *Bartlett v. Hopkins*, 235 N.C. 165, 69 S.E. 2d 236 (1952). However, "[t]he constitutional right to trial by jury (citation omitted) is not

absolute; rather, it is premised upon a preliminary determination by the trial judge that there indeed exist genuine issues of fact and credibility which require submission to the jury." *North Carolina Nat'l Bank v. Burnette*, 297 N.C. 524, 537, 256 S.E. 2d 388, 396 (1979) (regarding the granting of a directed verdict as precluding a trial by jury). Precisely this question was decided with regard to a compulsory reference in *Nantahala Power and Light Co. v. Horton*, 249 N.C. 300, 106 S.E. 2d 461 (1959). As here, a party to a compulsory reference preserved his right to jury trial by filing exceptions to the referee's report and tendering issues. The North Carolina Supreme Court held that the party was entitled to trial by jury only if the evidence before the referee was sufficient to raise an issue of fact. *Id.*

[2] Since defendants' entitlement to a jury trial hinges on whether the evidence before the referee regarding the location of the true boundary line was sufficient to raise an issue of fact, we shall review the evidence as to this issue. The adjacent tracts of land in the case *sub judice* can be traced back to the 1800's when there was a common grantor. The defendants' tract lies to the south of plaintiffs' land. Plaintiffs and defendants each have a deed with reciprocal provisions using the same description as the one in the deed from the common grantor. The disputed boundary line is described in the deeds in relation to "a stone on Scott's line" and "a stone on Busick's line." Surveys of the two tracts were conducted for the first time prior to the institution of this action. Horace Faucette, Registered Land Surveyor, surveyed the lines for plaintiffs in 1980. Lacy Quint Tickle, Registered Land Surveyor, surveyed the lines for defendants in 1980. Both surveyors published their surveys. According to the extensive testimony of both surveyors, the two surveys agreed as to the location of the adjoining boundary line. Even though the stones referred to in the deeds could not be located at the time of the surveys, the location of boundary lines could be ascertained based upon the known boundaries of the property due west of the two tracts at issue and consistent with the boundaries of other neighboring properties. The evidence offered to challenge the location of the adjoining boundary as determined by the surveys and testimony of the surveyors consisted of testimony from several friends, family members of defendants and others. Their testimony consisted of statements as to where the witnesses *believed*

the stones, now missing, used to be located. The stones, referred to in both deeds, marked the points common to both tracts, that is, the northwest corner of the Zimmerman tract and the northeast corner of the Zimmerman tract. These beliefs were based on what the witnesses had been told by relatives or what they remembered from years past. There was no consistency among this testimony. When a dividing line between two tracts can be located by calls in a deed, the statements and acts of adjoining landowners are not competent evidence as to the location of the boundary line. *Wadsworth v. Georgia-Pacific Corp.*, 38 N.C. App. 1, 247 S.E. 2d 25 (1978), *vacated on other grounds*, 297 N.C. 172, 253 S.E. 2d 925 (1979). The inconsistent testimony of defendant's witnesses does not raise a genuine issue of fact when a disputed boundary line can be determined by two separate surveys based on calls in two separate deeds. Submission of the case to a jury was unwarranted and inappropriate on this issue.

[3] The referee also heard evidence on the issue of adverse possession even though the issue was not part of the formal pleadings. The referee has authority to resolve issues not contained in the pleadings at any stage of the action. Rule 53(e), N.C. Rules Civ. P. Next we shall inquire whether this evidence raised an issue of fact regarding defendants' claim of adverse possession.

The referee's findings of fact pertinent to the issue of adverse possession are:

18. . . . Mr. Zimmerman testified that he claimed the land which had been conveyed to D. E. Zimmerman in 1898, and admitted that he did not claim land he knew to belong to Marcus Faucette.

19. Various witnesses testified that members of the Zimmerman family had tended two fields partially within the disputed area for more than twenty years, and that one of these fields was located at the northwestern corner of the Zimmerman property and the other (the "Red" field) was located approximately 500 feet west of the northeastern corner of the Zimmerman property. These fields extended to the north of and beyond the surveyed property line between Faucette, on the north, and Zimmerman, on the south, by a distance of between twenty and thirty feet.

These facts are not in dispute. Based on these facts the referee made the following conclusion of law:

> 25. The evidence of the Zimmermans, respondents, does reflect that members of the greater Zimmerman family have exercised some dominion and control over parts of the disputed area, by tending two fields along the Zimmermans' northern property line (Faucettes' southern property line), which cultivation in certain areas went beyond the boundary now marked by the surveys. This dominion and control alone, however, cannot ripen into title by adverse possession, inasmuch as the Zimmermans, respondents, and through whom they claim, mistakenly thought that the northern property line of the Zimmerman tract was located some distance farther to the north than where it is located by the surveys. The occupation of land beyond the boundary called for in the Zimmerman deed under the mistaken belief that the land was covered by the description in the deed was not adverse until 1980, the time the Zimmermans discovered that the disputed area was not included within the description in their deed. *The possession by the Zimmermans, and through whom they claim, of certain portions of the disputed area was therefore by mistake, and was not adverse.* (Emphasis added.)

[4]   The trial judge confirmed and adopted the referee's report in its entirety, including the above stated findings and conclusion. Although the presumption is that the court on proper evidence found facts to support its order, the record may clearly reveal that the court erroneously drew legal conclusions from these facts. *H. V. Allen Co. v. Quip-Matic Inc.*, 47 N.C. App. 40, 46, 266 S.E. 2d 768, 770, *disc. rev. denied*, 301 N.C. 85, 273 S.E. 2d 298 (1980). The rule of property upon which the referee and Judge Albright relied, namely that possession by mistake cannot be adverse, is no longer the law in North Carolina. We must decide whether this change of property law renders Conclusion of Law 25 erroneous.

In the recent case, *Walls v. Grohman*, 315 N.C. 239, 249, 337 S.E. 2d 556, 567 (1985), our Supreme Court held:

> We have concluded that a rule which requires the adverse possessor to be a thief in order for his possession of the property to be 'adverse' is not reasonable, and we now

join the overwhelming majority of states . . . and hold that when a landowner, acting under a mistake as to the true boundary between his property and that of another, takes possession of the land believing it to be his own and claims title thereto, his possession and claim of title is adverse.

The North Carolina Supreme Court announced this rule and overruled case law to the contrary while the case *sub judice* was pending on appeal.

"The general principle is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former decision is bad law, but that it never was the law." *Mason v. Cotton Co.*, 148 N.C. 492, 510, 62 S.E. 625, 632 (1908). A retroactive or retrospective application applies to all of the following situations: (1) the parties and facts of the case in which the new rule is announced; (2) cases in which the factual event, trial and appeal are at an end, but in which a collateral attack is brought; (3) cases pending on appeal when the decision is filed; (4) cases awaiting trial; and (5) cases initiated in the future but arising from earlier occurrences. *State v. Rivens*, 299 N.C. 385, 389, 261 S.E. 2d 867, 870 (1980). A wholly prospective application of a decision applies solely to causes of action arising after the filing date of the opinion. *Id.* Overruling decisions are presumed to operate retroactively, *id.* at 390 (citing *Mason v. Nelson Cotton Co.*, *supra*), absent a compelling reason to operate only prospectively, *id.* (citing *Hill v. Brown*, 144 N.C. 117, 56 S.E. 693 (1907)).

In considering whether a compelling reason exists for prospective application we must look to the purpose and effect of the new rule and whether retrospective operation will further or retard its operation. *Linkletter v. Walker*, 381 U.S. 618, 629, 14 L.Ed. 2d 601, 608, 85 S.Ct. 1731, 1738 (1965). Other criteria appropriate for consideration are the reliance placed upon the old rule and the effect on the administration of justice of a retrospective application. *Id.* at 636, 14 L.Ed. 2d at 612, 85 S.Ct. at 1741. A wholly prospective application would have the effect of retarding the operation of the rule. The purpose of the new rule—to avoid rewarding the thief—and the effect will be furthered by retroactive application. No compelling reasons exist for wholly prospective application.

We shall now apply these rules to the facts before us. The instant case was pending on appeal when the decision of *Walls v. Grohman* was announced. Cases pending on appeal is one of the five situations stated above wherein retroactive application applies, hence *Walls v. Grohman* applies to the case at hand. In *Walls v. Grohman* the Supreme Court held that when one, acting under a mistake as to the true boundary between his property and that of another, takes possession of the land believing it to be his own, his possession is adverse. "If such adverse possession meets all other requirements and continues for the requisite statutory period, the claimant acquires title by adverse possession even though the claim of title is founded on a mistake." *Walls v. Grohman, supra,* at 249, 337 S.E. 2d at 562.

The record in the instant case clearly reveals that the referee found and concluded that defendants took possession of plaintiffs' land under the mistaken belief as to the location of the boundary line. The referee's further conclusion adopted by the court, that such possession cannot be adverse is clearly erroneous in light of *Walls v. Grohman.* In holding that *Walls v. Grohman* does apply to this case, material issues of fact are raised, specifically factual issues regarding whether all requirements of adverse possession have been met and continued for the statutory period.

In conclusion, because material issues of fact do exist and because defendants properly preserved their right to a trial by jury, defendants are entitled to a jury trial to resolve these factual issues. Therefore, we reverse and remand this case to the Superior Court of Guilford County for a jury trial on the question of adverse possession.

Reversed and remanded.

Chief Judge HEDRICK and Judge WHICHARD concur.